75,934-08

Clerk
Court of Criminal Appeals
P.O. Box 12308 Capitol Station
Austin, Tx. 78711     C.M.R.R.R.# 7014 2870 0001 6610 6407

June 28, 2015

Re: Relators Leave of Court to File Mandamus
    Petition for Writ of Mandamus
    TEX. R. APP. P. 9.3 (b)(1)
    Trial Court No's 5591;5593 and 5617
    1A Judicial District Court, Newton County Texas

RECEIVED IN
COURT OF CRIMINAL APPEALS

JUL 15 2015

Abel Acosta, Clerk

Styled: James Allen Pelloat, Relator
        v.
        Jerome P. Owens, Judge, Respondent

Dear Clerk, Court of Criminal Appeals of Texas:

By receipt, please find enclosed one original copy of Relators Motion
for Leave to file Writ of Mandamus as well as Relators Petiton for
Writ of Mandams including his Appendix.

Because this is a pleading pursuant to TEX. CODE CRIM. PROC. art.
11.07, I have included only one copy.

Please file and bring to the Courts attention so that it may consider
and issue a ruling.

Thank you in advance for your kind and prompt attention in this
matter.

James Allen Pelloat, Relator pro se
C.T. Terrell Unit, 1289716
1300 FM 655
Rosharon, Tx. 77583

cc. Jerome P. Owens, Respondent
    District Attorney, Newton County Texas     (LESS EXHIBITS AND APPENDIX)

ENCLOSURES:
        EXHIBITS 1-4

        APPENDIX 1- 53

IN THE COURT OF CRIMINAL APPEALS OF TEXAS

TRIAL COURT NUMBERS 5591; 5593 AND 5617

**********************************************************************

JAMES ALLEN PELLOAT, Relator


VS.


JEROME P. OWENS, JUDGE, 1A DISTRICT COURT, NEWTON COUNTY TEXAS,
Respondent


**********************************************************************

RELATOR'S MOTION FOR LEAVE OF COURT TO FILE PETITION FOR

WRIT OF MANDAMUS TO COMPEL RESPONDENT TO ORDER DISTRICT CLERK

TO PROCESS APPLICATIONS FOR WRIT OF HABEAS CORPUS PURSUANT

TO TEX. CODE CRIM. PROC. art. 11.07

**********************************************************************


JAMES ALLEN PELLOAT, RELATOR PRO SE
C.T. TERRELL UNIT, 1289716
1300 FM 655
ROSHARON, TX. 77583

5591; 5593 AND 5617

JAMES ALLEN PELLOAT, Relator § IN THE COURT OF CRIMINAL APPEALS

V. §

JEROME P. OWENS, Judge,
                Respondent § OF        TEXAS

RELATOR'S MOTION FOR LEAVE OF COURT FOR WRIT OF MANDAMUS

TO COMPEL RESPONDENT TO ORDER DISTRICT CLERK TO PROCESS

APPLICATIONS FOR WRIT OF HABEAS CORPUS PURSUANT TO TEX. CODE.

CRIM. PROC. art. 11.07

TO THE COURT OF CRIMINAL APPEALS OF TEXAS:

JAMES ALLEN PELLOAT, Relator in the above Trial Court Numbers seeks Leave of Court to File Petition for Writ of Mandamus to Compel Respondent, Honorable Jerome P. Owens, Presiding Judge of the 1A Judicial District Court, Newton County Texas, to Order District Clerk of Newton County, Texas to Process Applications for Writ of Habeas Corpus, pursuant to TEX. CODE CRIM. PROC. art. 11.07. In support Relator states that this Court has Jurisdiction pursuant to TEX. CODE CRIM. PROC. art. 11.07 § 3(a)

Relator has no other remedy in law.

PRAYER

WHEREFORE PREMISES CONSIDERED, Relator prays this Court of Criminal Appeals grant him leave to proceed with this Petition.

James Allen Pelloat, Relator pro se
C.T. Terrell Unit, 1289716
1300 FM 655
Rosharon, Tx. 77583

-1-

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of Relator's Motion for Leave of Court for Writ of Mandamus to Compel Respondent to Order District Clerk to Process Applications for Writ of Habeas Corpus Pursuant to TEX. CODE CRIM. PROC. art. 11.07 was sent to the below by U.S. Mail first class postage pre paid on this the 28ᵗʰ day of ＪＵＮＥ , 2015


Honorable Jerome P. Owens, Judge
1A Judicial District Court, Newton County Texas
203 Courthouse, 2nd. Floor
Woodville, Tx. 75979


District Attorney, Newton County Texas
1A Judicial District Court
203 Counthouse
Woodville, Tx. 75979


James Allen Pelloat

IN THE COURT OF CRIMINAL APPEALS OF TEXAS

TRIAL COURT NO'S 5591; 5593 AND 5617

*********************************************************************

JAMES ALLEN PELLOAT, Relator

VS.

JEROME P. OWENS, JUDGE, 1A DISTRICT COURT, NEWTON COUNTY TEXAS,
Respondent

*********************************************************************

RELATOR'S PETITION FOR WRIT OF MANDAMUS TO COMPEL RESPONDENT

TO ORDER DISTRICT CLERK TO PROCESS APPLICATIONS FOR WRIT OF

HABEAS CORPUS PURSUANT TO TEX. CODE CRIM. PROC. art. 11.07

*********************************************************************


JAMES ALLEN PELLOAT, RELATOR PRO SE
C.T. TERRELL UNIT, 1289716
1300 FM 655
ROSHARON, TX. 77583

5591; 5593 AND 5617

JAMES ALLEN PELLOAT, Relator    §    IN THE COURT OF

V.                              §    CRIMINAL    APPEALS

JEROME P. OWENS, Judge
            Respondent.         §    OF TEXAS

RELATOR'S PETITION FOR WRIT OF MANDAMUS TO COMPEL RESPONDENT

TO ORDER DISTRICT CLERK TO PROCESS APPLICATIONS FOR WRIT OF

HABEAS CORPUS PURSUANT TO TEX. CODE CRIM. PROC. art. 11.07

TO THE COURT OF CRIMINAL APPEALS OF TEXAS:

JAMES ALLEN PELLOAT, Relator pro se in the above Trial Court numbers seeks this Court of Criminal Appeals to order the Respondent Jerome P. Owens, Judge of the 1A Judicial District Court, Newton County Texas to order the District Clerk of Newton County Texas to process Relators Applications for Writ of Habeas Corpus pursuant to the statutory requirements of TEX. CODE CRIM. PROC. art. 11.07 that has been filed since July 11, 2012 and not otherwise processed as required by law. In support, Relator will show just cause as to why Mandamus should issue:

JURISDICTION

This Court of Criminal Appeals has jurisdiction pursuant to the TEXAS STATE CONSTITUTION Article V § 5 in all criminal matters.

STATEMENT OF THE CASES
1.

On July 11, 2012, Relator, a State prisoner who is being confined pursuant to the above case numbers submitted his Amended Applications for Writ of Habeas Corpus which were subsequently

---

1. See Appendix at 15

-1-

file marked by the District Clerk of Newton County and copies were returned to the Relator.

On October 18, 2012 and November 12, 2012 Relator wrote the District Clerk of Newton County to inquire into the disposition of his pending Applications for Writ of Habeas Corpus Appendix 16-17 and has not received any response from his inquiries.

Finally on December 10, 2014, Relator submitted to the Presiding Judge of the 1A Judicial District Court of Newton County, Texas (Convicting Court) his Motion entitled as : Applicants Motion to Compel Trial Court Judge to Order District Clerk to Process Amended Application for Writ of Habeas Corpus Filed July 11, 2012 and brief in support in Trial Court Numbers 5591; 5593 and 5617.

The above Motion was sent to Judge Jerome P. Owens by certified Mail, Return Receipt Requested in which Relator asked for a file marked copy of the letter presenting the Motion to Compel.[2]

On April 13, 2015, Relator sent another letter to the Presiding Judge of the 1A Judicial District Court, Newton County Texas, again making an inquiry into the disposition of his Motion to Compel See Exhibit-2 Relator advised the Respondent, Judge Jerome P. Owens that he would wait 10 days before seeking Mandamus.

<u>ARGUMENT IN SUPPORT OF MANDAMUS</u>

Relator submits to this Court of Criminal Appeals his Appendix in which he moves this Court adopt as presented to the Respondent

---

2. There are Two (2) records attached herein for this Court to consider: Exhibits and Appendix. The Appendix follows the Exhibits such as Exhibit-1: Applicants Motion to Compel, Returned file marked copy of letter presenting Motion to Compel; Envelope and Green Card acknowledging Receipt.

on December 10, 2014. The only exceptions to the already submitted Appendix to the Respondent are copies of an inquiry that Relator made to the Texas State Law Library to determine whether or not his Applications had already been disposed of by this Court and are incorporated herein as Exhibit-3: Letter to Texas State Law Library; Response and Index of Applications.

Relator has not received any response by Respondent at the date of submission of this Petition for Writ of Mandamus.

Relator contends that he is entitled to Mandamus relief for this Court of Criminal Appeals to order Respondent, Judge Owens of the 1A Judicial District Court, Newton County Texas to order the District Clerk of Newton County Texas to process the already late Applications for Writ of Habeas Corpus.

Relator has no other remedy at law to redress the alleged harm and under relevant law and facts, the act sought to be compelled is purley ministerial and not involving a discretionary or judicial decision State ex rel. Young v. Sixth Judicial District Court of Appeals, 236 S.W. 3d 207, 210 (Tex. Crim. App. 2007)(Original proceedings)

Relator further contends that the act is ministerial if it does not involve the exercise of any discretion and the Relator has a clear right to relief State ex. rel. Hill v. Court of Appeals for the Fifth District, 34 S.W. 3d 924, 927 (Tex. Crim. App. 2001)( Original proceedings); In re Daisy, 156 S.W. 3d 922, 924 (Tex. App.- Dallas 2005 orig. proceeding)

Pursuant to the Rules of Judicial Administration, Rule 7 states a: A District or Statutory County Court Judge shall (6) to the

extent consistent with safeguarding the rights of litigant to the just processing of their cases on the docket of the Court, including (e)local rules, consistently applied, to regulating procedures and timely pleadings, discovery and motions See TEX. GOV. CODE § 74.024 , Rule 7 (6)(e)

The District Clerk is required to file the Applications and to process them according to the provisions of TEX. CODE CRIM. PROC. art. 11.07 § 3(b)

Relator has had no alternative but to go through the presiding Judge of the convicting Court and rely on the Judge to order the District Clerk of Newton County Texas to process his Applications for Writ of Habeas Corpus pursuant to TEX. CODE CRIM. PROC. art. 11.07 § 3 (b)

## CONCLUSION

Relator has previously submitted his Motion to Compel to the Respondent with no apparant relief consistent with his duty as a District Judge and the administration of his docket.

Relator presented his Motion to Compel in the orderly manner as is required by law.

Relator moves that Mandamus should issue to compel the Presiding Judge to order the District Clerk of Newton County Texas to process his Applications for Writ of Habeas Corpus as required by law.

## PRAYER

WHEREFORE PREMISES CONSIDERED, Relator prays for relief that is consistent with his argument, Exhibits and Appendix as presented, that Mandamus will issue.

-4-

3.

art. 11.07 § 3 (b)

Respectfully Submitted,

_James Allen Pelloat_

James Allen Pelloat, Relator pro se
C.T. Terrell UNit, 1289716
1300 FM 655
Rosharon, Tx. 77583

## UNSWORN DECLARATION

I, James Allen Pelloat, an Offender incarcerated at the C.T. Terrell
Unit located in Brazoria County Texas declare and verify that the
contents herein are true and correct under penalty of perjury. Done
on this the 29th day of June , 2015

_James Allen Pelloat_

James Allen Pelloat, Affiant
C.T. Terrell Unit, 1289716
1300 FM 655
Rosharon, Tx. 77583

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of Relators Petition for Writ
of Mandamus to Compel Respondent to the District Clerk to Process
Applications for Writ of Habeas Corpus Pursuant to TEX. CODE CRIM.
PROC. art. 11.07 was sent to the below by U.S. Mail, first class,
postage pre paid on this the 29th day of June 2015

Jerome P. Owens, Judge
1A District Court, Newton County Texas
203 Courthouse, 2nd. Floor
Woodville, Tx. 75979

District Attorney, Newton County Texas
1A District Court
203 Courthouse
Woodville, Tx. 75979

_James Allen Pelloat_

James Allen Pelloat

3. See Exhibit-4 : Letter dated May 27, 2015; Texas State Law Library in
reference to Index for AP-76,779 (entire file) In an abundance of
caution, Applicant submitted to the Texas State Law Library his
inquiry into the contents of AP-76,779 See Also  Ex Parte Kerr,
64 S.W. 3d 414, 419 (Tex. Court Crim. App. 2002)(This Court stated
that Applicant had only one bite of the apple) See & Compare
Applicant's Exhibit's 3;4 (Denying Applicant that bite) (TEXAS STATE
CONSTITUTION, Article One § Nineteen°) (Denying Due Process of the
Law of the Land)             -5-

## INDEX OF EXHIBITS

EXHIBIT-1: APPLICANTS MOTION TO COMPEL: RETURNED FILE MARKED

COPY OF LETTER PRESENTING MOTION TO COMPEL; ENVELOPE
AND GREEN CARD ACKNOWLEDGING RECEIPT.

EXHIBIT-2: APRIL 13, 2015 LETTER TO JUDGE OWENS (RESPONDENT)

GREEN CARD ACKNOWLEDGING RECEIPT

EXHIBIT-3: LETTER TO TEXAS STATE LAW LIBRARY; RESPONSE AND

INDEX OF APPLICATIONS

EXHIBIT-4: LETTER FROM TEXAS STATE LAW LIBRARY, DATED MAY 27, 2015

INDEX FOR AP 76,779

EXHIBIT-1

APPLICANTS MOTION TO COMPEL; RETURNED FILE MARKED COPY OF

LETTER PRESENTING MOTION TO COMPEL; ENVELOPE AND GREEN CARD

ACKNOWLEDGING RECEIPT


( 9 . PAGES )

Honorable Jerome P. Owens, Judge
1-A Judicial District Court, Newton County Texas
203 Courthouse, 2nd. Fl.
Woodville, Tx. 75979

C.M.R.R.#  7011 0110  0002  1573  0007

December 10, 2014

Re: Applicants Motion to Compel Trial Court Judge to Order
    District Clerk to Process Amended Application for Writ
    of Habeas Corpus Filed July 12, 2012 and Brief In Support
    Trial Court No's 5591, 5593 and 5617
    1-A Judicial District Court, Newton County Texas

Styled: Ex Parte James Allen Pelloat

Dear Judge  Owens:

Please find enclosed One original copy of Applicants above entitled
motion, including his Appendix 1-55

Please file and bring it to your Courts attention as presented.

I am also enclosing an extra copy of this letter with a self
addressed stamped envelope so that you may file mark the same and
return it to me for my records.

Thank you in advance for your kind and prompt attention in this
matter.

_James Allen Pelloat_ (signature)
-----------------------------------------
James Allen Pelloat, Applicant pro se
C.T. Terrell Unit, 1289716
1300 FM 655
Rosharon, Tx. 77583


ENCLOSURES: As set out above



U.S. Postal Service™
CERTIFIED MAIL™ RECEIPT
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com®

OFFICIAL USE

| Postage | $ 5.80 |
| Certified Fee | 3.30 |
| Return Receipt Fee (Endorsement Required) | 2.70 |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ 11.80 |

Postmark Here    DEC 15 2014    77583

Sent To
HON. JEROME P. OWENS, JUDGE 1-A DISTRICT COURT
Street, Apt. No.
or PO Box No. 203 COURTHOUSE, 2 ND. FL.
City, State, ZIP+4
WOODVILLE, TX. 75979

PS Form 3800, August 2006          See Reverse for Instructions

COPY
ORIGINAL FILED

DEC 29 2014

BREE ALLEN
District Clerk, Newton Co.

HONORABLE JEROME P. OWENS, JUDGE
1-A JUDICIAL DISTRICT COURT, NEWTON COUNTY TEXAS
205 COURTHOUSE, 2ND. FL.
WOODVILLE, TX. 75979

1-5-15

A246

NORTH HOUSTON TX 77

30 DEC 2014 PM 4 L

USA
FOREVER

JAMES ALLEN PELLOAT
C.T. TERRELL UNIT, 1289716
1300 FM 655
ROSHARON, TX. 77583

77583860400

| SENDER: COMPLETE THIS SECTION | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired. <br> ■ Print your name and address on the reverse so that we can return the card to you. <br> ■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature <br> X _Melanie Perry_ ☐ Agent ☐ Addressee <br> B. Received by (Printed Name)   C. Date of Delivery <br> _Melanie Perry_ <br> D. Is delivery address different from item 1? ☐ Yes <br>   If YES, enter delivery address below: ☐ No |
| 1. Article Addressed to: <br><br> Judge Owens <br> 203 Courthouse <br> Woodville, TX 75979 | |
| | 3. Service Type <br> ☐ Certified Mail®  ☐ Priority Mail Express™ <br> ☐ Registered  ☐ Return Receipt for Merchandise <br> ☐ Insured Mail  ☐ Collect on Delivery <br> 4. Restricted Delivery? (Extra Fee)   ☐ Yes |
| 2. Article Number <br> (Transfer from service label)  7011 0110 0000 2157 3600 | |
| PS Form 3811, July 2013     Domestic Return Receipt | |

No.5594

| JAMES ALLEN PELLOAT | § IN THE 1-A JUDICIAL DISTRICT |
|---|---|
| | § COURT AT |
| EX PARTE, APPLICANT | § NEWTON COUNTY, TEXAS |

## MOTION TO COMPEL TRIAL COURT JUDGE TO ORDER DISTRICT CLERK TO PROCESS AMENDED APPLICATION FOR WRIT OF HABEAS CORPUS FILED JULY 12, 2012 AND BRIEF IN SUPPORT

TO THE PRESIDING JUDGE, 1-A JUDICIAL DISTRICT COURT:

JAMEAS ALLEN PELLOAT, Applicant pro se in the above styled and numbered case presents this his first motion to compel Trial Court Judge, Honorable Jerome P. Owens to order the District Clerk of Newton County, Texas to process his Amended Application for Writ of Habeas Corpus as required by Tex. Code Crim. Proc. art. 11.07 that has been filed and pending since July 12, 2012 without due process of law.[1] In support, Applicant will show the presiding Judge good cause as to why his motion and accompanying brief in support should be incorporated within that Amended Application for consideration:

## STATEMENT OF THE CASE

Applicant was convicted in the above numbered case for felony conduct as follows:

" did then and there, intentionally or knowingly, while an employee of a public secondary school, engage in sexual contact with Thomas Kinghton, a person then enrolled in the secondary school at which the Defendant worked, and Thomas Knighton was not the Defendant's spouse"

Applicant was represented by retained counsel, Honorable William S. Morian Jr., a licensed attorney, licensed in this state.

---

1. Texas State Constitution, Article One, Section Nineteen

-1-

The above Application was submitted by Applicant on April 11, 2011 and filed by the District Clerk, Newton County Texas on April 14, 2011, in conformity with TEX. R. APP. P.[2] See TEX. R. APP. P. 73.4

The record was transmitted to the Court of Criminal Appeals and assigned Writ number # 75,934-04

On June 22, 2011, the Court of Criminal Appeals of Texas issued an order (Per curiam) See Appendix at 1-3 that ordered the Trial Court to make findings of fact as to whether Applicants counsel was aware that the statute making improper relationship between an educator and a student a crime was enacted in 2003 (Ordering trial counsel to provide an affidavit responding to Applicants claim of ineffective assistance of counsel) Appendix at p. 2

On July 29, 2011, retained counsel filed his affidavit See Appendix 4-6 and on 9-26-2011, the Trial Court submitted its finding of fact and conclusions of law, recommending that relief be denied See Appendix at. p. 7-10

On February 15, 2012, The Court of Criminal Appeals of Texas issued another order (Per curiam) ordering: "We have held that the State may 'waive an illegal portion of a judgment and maintain the remainder of the plea agreement'" (Determining that the complainant in the 03 case was no longer a student at the school where Applicant taught at the time the statute making improper relationship between educator and student an offense was enacted)

---

2. The Court of Criminal Appeals of Texas consolidated all of Applicants Applications into one order.

-2-

The Court of Criminal Appeals of Texas further ordered the Trial Court to determine whether the State wishes to accept such a modified plea agreement or whether the State wishes to have the entire plea undone Appendix at. p. 11-13

On March 8, 2012, the Trial Court issued a Supplemental Finding of Fact See Appendix at. 14, advising the Court of Criminal Appeals of Texas that the State accepts the plea agreement as modified Appendix at 12. (2)

On July 11, 2012, Applicant submitted his Amendment to Original Habeas Corpus See Appendix at 15 (ND-5591-A; 5593-A; 5617-A )

On October 18, 2012 and on November 12, 2012, Applicant notified the District Clerk, Newton County of the disposition of his pending Amendement to Original Habeas Corpus with no response See Appendix at 16-17 (Letters to District Clerk, Newton County Texas)

APPLICANTS BRIEF IN SUPPORT OF MOTION TO COMPEL

Applicant moves this Court take judicial notice of the Clerks Record in Writ No's 75,934-01 thru 75,934-04, pursuant to TEX. R. EVID. 201 (d) for purposes of this Brief (Memorandum).

Texas case law cleraly states that in a Writ of Habeas Corpus the Applicant is entitled to One (1) Application by which the Court of Criminal Appeals will consider, but that in that Application, the Applicant must bring to the Court [a]ll issues to be resolved as the Applicant can only take one bite of the apple. See Ex Parte Kerr, 64 S.W. 3d 414, 419 (Tex. Crim. App. 2002)

In Applicants Clerks Record transmitted to the Court of Criminal Appeals, the District Clerk of Newton County Texas

indexed that Application, in particular, BRIEF IN SUPPORT OF APPLICATION FOR WRIT OF HABEAS CORPUS See CLERKS Index at 13-77

This Brief in support brought to the attention of the Trial Court and the Court of Criminal Appeals that Applicants plea was involuntarly C.R. at 29-34 and that his counsel was ineffective C.R. at 34-39

Applicant stated that but for counsel being ineffective he would not have accepted the plea and taken the cases to trial. C.R. 32 (But for counsels errors, he would not have pleaded guilty and would have insisted on going to trial)

## CAUSE AND PREJUDICE

Applicant contends that counsel was ineffective because he did not know the law that was in effect and that because he failed to investigate caused him to be convicted, caused him to accept the plea.

## LAFLER V. COOPER, 132 S.CT. 1376 (2012)

Lafler v. Cooper, 132 S.Ct. 1376 (2012) was argued before the United States Supreme Court on October 31, 2011 and decided on March 21, 2012 See Appendix at 18-41 in that a Defendants are entitled to effective assistance of counsel during the plea bargain process citing Strickland v. Washington, 104 S.Ct. 2052 (1984)

Just before Lafler v. Cooper was decided, the Court of Criminal Appeals decided Ex Parte Moussazadeh, 361 S.W. 3d 684 (Tex. Crim. App. 2012)

In Moussazadeh, the Court held that counsel was ineffective because he did not know the parole law that was in effect for

-4-

purposes of the plea bargain agreement See Appendix at 42-52, Applicant stated that "But for the erroneous advise of counsel, the Applicant would not have pled guilty Slip Opinion at 8 , Appendix at 49. The Court further stated that "Both failure to provide correct information and providing incorrect information violated that duty" (Assistance of counsel) Slip Opinion at 9, Appendix at 50

Moussazadeh was decided February 15, 2012 in which JOHNSON J. delivered the opinion of the Court at which PRICE, WOMACK, KEASLER HERVEY, COCHRAN and ALCALA JJ. joined. KELLER P.J. filed a concurring opinion, Meyers J. did not participate. Slip Opinion at 1, Appendix at 42

This Court issued its order by which it ordered the Trial Court to determine whether the State wishes to accept such a modified plea agreement or whether the State wishes to have the entire plea undone Appendix at 12 ¶ 2

Despite Applicants assertions that but for counsels errors, he would not have accepted the plea of guilt and gone to trial.C.R. 29-34; C.R. 34-39

Both Moussazadeh and Applicants order were issued on February 15, 2012 and Applicant might have benefitted from that opinion but for some reason, that opinion was withheld.

Applicant claims that after the Trial Courts Supplemental Findings of Fact of March 8, 2012, he did not hear back from the Trial Court or the Court of Criminal Appeals insofar as a final

-5-

opinion or a mandate from the Court of Criminal Appeals, thus, he filed his Amendments to the Original Habeas Corpus.

If Applicant is only entitled to one bite of the apple and the Court of Criminal Appeals found that Applicant was entitled to relief, but not enough relief to be consistent with the holding in Lafler v. Cooper or the holding in Ex Parte Moussazadeh, despite the fact that both cases reached the same conclusion that counsels advise was bad and that such bad counsel violated his right under the Sixth Amendment, both were entitled to relief.

This Court must bear in mind that Applicant made his claim prior to the decisions in Lafler v. Cooper and Ex Parte Moussazadeh and therefore should be entitled to the same consideration.

No-one can look into the mind of the Applicant, except the Applicant by which he clearly stated that he would have taken his cases to trial.

## CONCLUSION

The District Clerk of Newton County Texas has a duty to file and bring the Applications for Writ of Habeas Corpus to the Courts attention and that of the counsel for the State of Texas but has not done so.

Applicant moves this Court order the Applications, Amended as they may be processed as a matter of law or returned for non so compliance, bearing in mind that Applicant has never received a final decision from this Court or the Court of Criminal Appeals in his Applications.

In any event, this Court must so order.

-6-

In conclusion, the Trial Court, the Presiding Judge of the Trial Court should so order the District Clerk to process the Amended Habeas Corpus as presented.

## PRAYER

WHEREFORE PREMISES CONSIDERED, Applicant prays this Court order the Disteict Clerk of Newton County, Texas to process his Amended Habeas Corpus as presented, or as a alternative order a hearing with Applicant present so that he may articulate what constitutional violations have been done in these applications.

Respectfully Submitted,

James Allen Pelloat, Applicant pro se
C.T. Terrell Unit, 1289716
1300 FM 655
Rosharon, Tx. 77583

EXHIBIT-2

APRIL 13, 2015 LETTER TO JUDGE OWENS ( RESPONDENT)

GREEN CARD ACKNOWLEDGING RECEIPT

( 2 PAGES )

Honorable Jerome P. Owens, Judge
1-A Judicial District Court, Newton County Texas
203 Courthouse, 2nd. Floor
Woodville, Tx. 75979

C.M.R.R.# 7013 2630 0001 1653 0158

District Attorneys Office
P.O. Drawer 36
Newton , Texas 75966

April 13, 2015

Re: Request for Ruling on Applicants Motion to Compel Trial Court
    Judge to Order District Clerk to Process Amended Application for
    Writ of Habeas Corpus Filed July 12, 2012 and Brief in Support
    Trial Court No's 5591; 5593; 5617
    Trial Court No. 1-A Judicial District, Newton County Texas.

Styled: Ex Parte James Allen Pelloat

Dear Judge Owens:

On December 10, 2014, I served you with a copy of the above by
Certified Mail, Return Receipt Requested # 7011 0110 0002 1573 0007
and requested that you file mark in your Court and issue a ruling
as presented.

On approximately December 31, 2014, the copy of the letter was
returned file marked December 29, 2014.

Your Honor, It has been well over 90 days since the above pleadings
have been pending in your Court. 90 days is considered to be a
reasonable amount of time for your Court to consider and issue a
ruling. The ruling in question is merely that pursuant to the
statutory provisions of TEX. CODE CRIM. PROC. art. 11.07 that the
District Clerk file and present to the District Attorney for their
response as well as you, the presiding judge to order the writ to
be transmitted to the Court of Criminal Appeals.

By receipt I am going to wait 10 days before I seek Mandamus in the
Court of Criminal Appeals in this matter. Please exercise your
authority and order the District Clerk to begin the process as a
matter of law.

Thank you in advance for your kind and prompt attention in this
matter.

James Allen Pelloat, Applicant pro se
C.T. Terrell Unit, 1289716
1300 FM 655
Rosharon, Tx. 77583

UNITED STATES POSTAL SERVICE



First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

• Sender: Please print your name, address, and ZIP+4® in this box•

JAMES ALLEN PELLOAT

C.T. TERRELL UNIT, 1289716

1300 FM 655

ROSHARON, TX. 77583

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

HONORABLE JEROME P. OWENS, JUDGE
1-A JUDICIAL DISTRICT COURT
NEWTON COUNTY TEXAS
203 COURTHOUSE, 2 ND. FLOOR
WOODVILLE, TX. 75979

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X Melanie Perry   ☐ Agent   ☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery

Melanie Perry

D. Is delivery address different from item 1?   ☐ Yes
If YES, enter delivery address below:   ☐ No

3. Service Type
☒ Certified Mail®   ☐ Priority Mail Express™
☐ Registered   ☒ Return Receipt for Merchandise
☐ Insured Mail   ☐ Collect on Delivery

4. Restricted Delivery? (Extra Fee)   ☒ Yes

2. Article Number
(Transfer from service label)    7013 2630 0001 1653 0158

PS Form 3811, July 2013    Domestic Return Receipt

EXHIBIT-3


LETTER TO TEXAS STATE LAW LIBRARY; RESPONSE   AND INDEX OF

APPLICATIONS


(   3   PAGES   )

Librarian
Texas State Law Library
P.O. Box 12367
Austin, Tx. 78711


December 9, 2014

Re: Cost for Disposed Applications for Writ of Habeas Corpus
    Writ # 75,934-01 thru 75,934-04
    Trial Court No's 5591, 5593, 5594 and 5617
    1-A Judicial District Court, Newton County Texas

Styled: Ex Parte James Allen Pelloat

Dear Librarian, Texas State Law Library:

By return mail, please advise me of the exact cost for the above
disposed Applications for Writ of Habeas Corpus

Tank you in advance for your kind and prompt attention in my request
for costs.

*James Allen Pelloat* (signature)
-----------------------------------
James Allen Pelloat, Applicant/Requester
C.T. Terrell Unit, 1289716
1300 FM 655
Rosharon, Tx. 77583



**TEXAS STATE LAW LIBRARY**
**P.O. BOX 12367**
**AUSTIN, TEXAS 78711-2367**

6 January 2015

RE: Requesting writ applications for WR-75,934-01 through -04

James Pelloat (#1289716)
Boyd Unit (051)
Teague, TX 75860-2007

Dear Mr. Pelloat,

Thank you for contacting the Texas State Law Library. We received your request on 12 December 2014.

Enclosed you will find an estimate for your document delivery request. We are returning the stamps you enclosed with your letter. We do not accept stamps as payment for requests.

Sincerely,
State Law Library Reference Staff



**STATE LAW LIBRARY**
**P.O. BOX 12367**
**AUSTIN, TEXAS 78711-2367**

To: James Pelloat #1289716
From: Inmate Copy Service Staff
Re: Cost of your request (#7298) for copies received December 12, 2014

Estimate #4120 dated January 6, 2015

| Document Requested | # of Pages | Cost | Check to order |
|---|---|---|---|
| **Court of Criminal Appeals** | | | |
| WR-75,934-01 PELLOAT, JAMES ALLEN - WRIT RECEIVED | | | |
| •APPLICATION FOR WRIT OF HABEAS CORPUS, FILED 4/14/11 | 12 Pages | $3.00 | ☐ |
| •BRIEF IN SUPPORT OF APPLICATION FOR WRIT OF HABEAS CORPUS, FILED 4/14/11 | 65 Pages | $16.25 | ☐ |
| **Court of Criminal Appeals** | | | |
| WR-75,934-02 PELLOAT, JAMES ALLEN - WRIT RECEIVED | | | |
| •APPLICATION FOR WRIT OF HABEAS CORPUS, FILED 4/14/11 | 12 Pages | $3.00 | ☐ |
| •BRIEF IN SUPPORT OF APPLICATION FOR WRIT OF HABEAS CORPUS, FILED 4/14/11 | 65 Pages | $16.25 | ☐ |
| **Court of Criminal Appeals** | | | |
| WR-75,934-03 PELLOAT, JAMES ALLEN - WRIT RECEIVED | | | |
| •APPLICATION FOR WRIT OF HABEAS CORPUS SEEKING RELIEF FROM FINAL FELONY CONVICTION UNDER CODE OF CRIMINAL PROCEDURE, ARTICLE 11.07 | 12 Pages | $3.00 | ☐ |
| •BRIEF IN SUPPORT OF APPLICATION FOR WRIT OF HABEAS CORPUS (FILED 4/14/11) | 65 Pages | $16.25 | ☐ |
| **Court of Criminal Appeals** | | | |
| WR-75,934-04 PELLOAT, JAMES ALLEN - WRIT RECEIVED | | | |
| •APPLICATION FOR WRIT OF HABEAS CORPUS SEEKING RELIEF FROM FINAL FELONY CONVICTION UNDER CODE OF CRIMINAL PROCEDURE, ARTICLE 11.07 | 12 Pages | $3.00 | ☐ |
| •BRIEF IN SUPPORT OF APPLICATION FOR WRIT OF HABEAS CORPUS (FILED 4/14/11) | 65 Pages | $16.25 | ☐ |
| | | | |
| Total pages: | | | 308 |
| Total cost: | | | $77.00 |
| Tax (8.25%): | | | $6.35 |
| Service Charge: | | | $5.00 |
| **ORDER TOTAL:** | | | **$88.35** |

EXHIBIT-4

LETTER FROM TEXAS STATE LAW LIBRARY, DATED MAY 27, 2015

INDEX FOR AP. 76,779

( 4 PAGES )



**TEXAS STATE LAW LIBRARY**
**P.O. BOX 12367**
**AUSTIN, TEXAS 78711-2367**

27 May 2015

RE: AP-76,779: entire file

James Pelloat (#1289716)
Terrell Unit (027)
Rosharon, TX 77583

Dear Mr. Pelloat,

Thank you for contacting the Texas State Law Library. We received your request on 23 April 2015.

Enclosed is an estimate for the requested case file, held at the Court of Criminal Appeals.

Please note that this estimate includes documents from not only #AP-76,779, but also documents from when it existed as a writ file, before it was file and set by the Court of Criminal Appeals, #WR-75,934-03.

Sincerely,


State Law Library Reference Staff

# PELLOAT, JAMES



**STATE LAW LIBRARY**
**P.O. BOX 12367**
**AUSTIN, TEXAS 78711-2367**

To: James Allen Pelloat #1289716
From: Inmate Copy Service Staff
Re: Cost of your request (#7786) for copies received April 23, 2015

Estimate #4467 dated May 19, 2015

| Document Requested | # of Pages | Cost | Check to order |
|---|---|---|---|
| **Court of Criminal Appeals** | | | |
| **AP-76,779 PELLOAT, JAMES ALLEN - NOTICE RETURNED** | | | |
| » DISTRICT COURT PRESIDING JUDGE: WHITE CARD RETURNED, NOT DELIVERABLE AS ADDRESSED, DATED 5/2/2012 | 1 Pages | $0.25 | ☐ |
| **Court of Criminal Appeals** | | | |
| **AP-76,779 PELLOAT, JAMES ALLEN - MANDATE ISSUED** | | | |
| » COURT OF CRIMINAL APPEALS: MANDATE, SIGNED 5/21/2012 (COPY) | 1 Pages | $0.25 | ☐ |
| » NEWTON COUNTY - MANDATE RECEIPT ACKNOWLEDGMENT | 1 Pages | $0.25 | ☐ |
| **Court of Criminal Appeals** | | | |
| **AP-76,779 PELLOAT, JAMES ALLEN - OPINION ISSUED** | | | |
| » COURT OF CRIMINAL APPEALS: OPINION -RELIEF IS GRANTED, DATED 04/25/2012 | 2 Pages | $0.50 | ☐ |
| **Court of Criminal Appeals** | | | |
| **WR-75,934-03 PELLOAT, JAMES ALLEN - WRIT RECEIVED** | | | |
| » ACTION TAKEN - REMANDED FOR AN EVIDENTIARY HEARING/AFFIDAVITS, SIGNED 6/22/2011 | 1 Pages | $0.25 | ☐ |
| » TRIAL CLERK'S COVER SHEET | 1 Pages | $0.25 | ☐ |
| » INDEX | 1 Pages | $0.25 | ☐ |
| » APPLICATION FOR A WRIT OF HABEAS CORPUS, FILED 4/14/2011 | 12 Pages | $3.00 | ☐ |
| » BRIEF IN SUPPORT OF APPLICATION FOR WRIT OF HABEAS CORPUS | 65 Pages | $16.25 | ☐ |
| » RECEIPT FROM CRIMINAL DISTRICT ATTORNEY | 1 Pages | $0.25 | ☐ |
| » INDICTMENT | 1 Pages | $0.25 | ☐ |
| » JUDGMENT OF CONVICTION BY COURT | 3 Pages | $0.75 | ☐ |
| » MOTION & ORDER NUNC PRO TUNC | 3 Pages | $0.75 | ☐ |
| » CLERK'S CERTIFICATE | 2 Pages | $0.50 | ☐ |
| **Court of Criminal Appeals** | | | |
| **WR-75,934-03 PELLOAT, JAMES ALLEN - SUPP_CLERK RECORD** | | | |
| » TRIAL CLERK'S COVER SHEET - SUPPLEMENTAL TRANSCRIPT, RECEIVED 11/7/2011 | 1 Pages | $0.25 | ☐ |
| » INDEX | 1 Pages | $0.25 | ☐ |
| » LETTER FROM JUDGE OWENS TO DISTRICT CLERK RE: TRANSMISSION OF SUPPLEMENTAL RECORD | 1 Pages | $0.25 | ☐ |
| » LETTER FROM COURT REPORTER TO JUDGE OWENS RE: ORIGINAL REPORTER'S RECORD ENCLOSED | 1 Pages | $0.25 | ☐ |
| » REPORTER'S RECORD OF PLEA | 9 Pages | $2.25 | ☐ |
| » CLERK'S CERTIFICATE | 1 Pages | $0.25 | ☐ |
| **Court of Criminal Appeals** | | | |
| **WR-75,934-03 PELLOAT, JAMES ALLEN - SUPP RECD** | | | |
| » ACTION TAKEN - REMANDED FOR AN EVIDENTIARY HEARING/AFFIDAVITS, SIGNED 11/2/2011 | 1 Pages | $0.25 | ☐ |
| » TRIAL CLERK'S COVER SHEET - SUPPLEMENTAL TRANSCRIPT, RECEIVED 10/7/2011 | 1 Pages | $0.25 | ☐ |

| | | | |
|---|---|---|---|
| » INDEX | 1 Pages | $0.25 | ☐ |
| » INDICTMENT | 1 Pages | $0.25 | ☐ |
| » WRITTEN PLEA ADMONISHMENTS | 6 Pages | $1.50 | ☐ |
| » GUILTY PLEA MEMORANDUM | 3 Pages | $0.75 | ☐ |
| » JUDGMENT OF CONVICTION BY COURT | 3 Pages | $0.75 | ☐ |
| » MOTION & ORDER NUNC PRO TUNC | 3 Pages | $0.75 | ☐ |
| » AFFIDAVIT OF WILLIAM S MORIAN, JR | 3 Pages | $0.75 | ☐ |
| » AFFIDAVIT OF ROBERT J CHOATE | 2 Pages | $0.50 | ☐ |
| » FINDINGS OF FACT AND CONCLUSIONS OF LAW - COURT RECOMMENDS RELIEF BE DENIED, 9/26/2011 | 4 Pages | $1.00 | ☐ |
| » CLERK'S CERTIFICATE | 1 Pages | $0.25 | ☐ |

**Court of Criminal Appeals**

| WR-75,934-03 PELLOAT, JAMES ALLEN - STATUS (INMATE CORRESPONDENCE) | | | |
|---|---|---|---|
| » LETTER FROM INMATE ARMSTRONG RE: CASE STATUS, DATED 1/26/2012 | 2 Pages | $0.50 | ☐ |

**Court of Criminal Appeals**

| WR-75,934-03 PELLOAT, JAMES ALLEN - ORDER ISSUED | | | |
|---|---|---|---|
| » COURT OF CRIMINAL APPEALS: ORDER - APPLICATION WILL BE HELD IN ABEYANCE UNTIL THE TRIAL COURT HAS RESOLVED THE FACT ISSUES, FILED 6/22/2011 | 3 Pages | $0.75 | ☐ |

**Court of Criminal Appeals**

| WR-75,934-03 PELLOAT, JAMES ALLEN - 2ND SUPPLEMENTAL WRIT | | | |
|---|---|---|---|
| » ACTION TAKEN - REMANDED FOR AN EVIDENTIARY HEARING/AFFIDAVITS, SIGNED 2/15/2012 | 1 Pages | $0.25 | ☐ |
| » TRIAL CLERK'S COVER SHEET - SUPPLEMENTAL TRANSCRIPTS, RECEIVED 12/27/2011 | 1 Pages | $0.25 | ☐ |
| » SUPPLEMENTAL FINDINGS OF FACT | 107 Pages | $26.75 | ☐ |
| » CLERK'S CERTIFICATE | 1 Pages | $0.25 | ☐ |

**Court of Criminal Appeals**

| WR-75,934-03 PELLOAT, JAMES ALLEN - 3RD SUPPLEMENTAL WRIT | | | |
|---|---|---|---|
| » ACTION TAKEN - FILED & SET/GRANTED, SIGNED 4/25/2012 | 1 Pages | $0.25 | ☐ |
| » TRIAL CLERK'S COVER SHEET - SUPPLEMENTAL TRANSCRIPT, RECEIVED 3/19/2012 | 1 Pages | $0.25 | ☐ |
| » INDEX | 1 Pages | $0.25 | ☐ |
| » CAPTION | 1 Pages | $0.25 | ☐ |
| » ELECTION BY THE CRIMINAL DISTRICT ATTORNEY | 1 Pages | $0.25 | ☐ |
| » SUPPLEMENTAL FINDINGS OF FACT | 1 Pages | $0.25 | ☐ |
| » CLERK'S CERTIFICATE | 1 Pages | $0.25 | ☐ |

| | | |
|---|---|---|
| Total pages: | 260 | |
| Total cost: | $65.00 | |
| Tax (8.25%): | $5.36 | |
| Service Charge: | $5.00 | |
| ORDER TOTAL: | $75.36 | |

**Note:** To request specific documents please only check the items desired and resubmit this form so that the Document Delivery Service may recalculate the copy job cost and supply you with a revised estimate and order form. If you wish to order *all* the documents listed above, please check below and return 1 copy of this form and payment for the total amount above to order copies.

**Notice: Warning Concerning Copyright Restrictions**
The copyright law of the United States (title 17, United States Code) governs the making of photocopies or other reproductions of copyrighted material. Under certain conditions specified in the law, libraries and archives are authorized to furnish a photocopy or other reproduction. One of these specified conditions is that the photocopy or reproduction is not to be "used for any purpose other than private study, scholarship, or research." If a user makes a request for, or later uses, a photocopy or reproduction for purposes in excess of "fair use," that user may be liable for copyright infringement. This institution reserves the right to refuse to accept a copying order if, in its judgment, fulfillment of the order would involve violation of copyright law.

☑ **CHECK HERE TO ORDER ALL ITEMS LISTED ABOVE**

**Please make cashier check, money order or inmate trust fund check payable to** *State Law Library.* Copy job turn-around depends on the size of your request, the number of requests being filled and staff time. The State Law Library staff does its best to fill orders as quickly as possible. Staff will begin copying your documents once payment is received.

**THE STATE LAW LIBRARY WILL NOT ACCEPT AN AMOUNT OTHER THAN THE AMOUNT QUOTED FOR PAYMENT. IF YOU MAKE CHANGES TO THE ESTIMATE, PLEASE SEND THOSE CHANGES TO THE STATE LAW LIBRARY AND WE WILL SEND YOU A NEW ESTIMATE. PAYMENTS RECEIVED THAT ARE NOT IN THE AMOUNT QUOTED WILL BE RETURNED.**

ESTIMATES ARE VALID FOR 90 DAYS AFTER THE DATE ISSUED.

COURT RECORDS ARE SUBJECT TO THE AVAILABILITY PROVIDED BY THE COURTS.

*Please return this entire sheet with your request!*

| UNIT/ADDRESS COPIES ARE TO BE SENT TO: |
|---|
| James Allen Pelloat - #1289716<br>Terrell Unit (027)<br>1300 FM 655<br>Rosharon, TX 77583 |
| **PAYMENT** |
| O Cashier's Check<br>O Money Order<br>O Inmate Trust Fund Check<br>Payment Due: $75.36 |
| **Send payment and this form to:** |
| STATE LAW LIBRARY<br>DOCUMENT DELIVERY<br>PO BOX 12367<br>AUSTIN, TX 78711-2367 |

APPENDIX          PAGE

COURT OF CRIMINAL APPEALS ORDER OF JUNE 22, 2011 1- 3

RETAINED COUNSELS AFFIDAVIT 4- 6

TRIAL COURTS FINDINGS OF FACT 7- 10

COURT OF CRIMINAL APPEALS ORDER OF FEBRAUARY 15, 2012 11-12

TRIAL COURTS SUPPLEMENTAL FINDINGS OF FACT 13

APPLICANTS SUBMITTED AMENDMENTS TO ORIGINAL
HABEAS CORPUS APPLICATIONS 14-16

APPLICANTS LETTERS TO DISTRICT CLERK 17-18

Lafler v. Cooper, 132 S.Ct. 1376 (2012) 19-42

Ex Parte Moussazadeh, 361 S.W. 3d 684 (2012) 43-53

COURT OF CRIMINAL APPEALS ORDER OF JUNE 22, 2011


( 3 PAGES )



# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NOS. WR-75,934-01, WR-75,934-02, WR-75,934-03 & WR-75,934-04

### EX PARTE JAMES ALLEN PELLOAT, Applicant

### ON APPLICATIONS FOR WRITS OF HABEAS CORPUS
### CAUSE NOS. 5591, 5593, 5617 & 5594 IN THE 1-A JUDICIAL DISTRICT COURT
### FROM NEWTON COUNTY

*Per curiam.*

## O R D E R

Pursuant to the provisions of Article 11.07 of the Texas Code of Criminal Procedure, the

clerk of the trial court transmitted to this Court this application for writ of habeas corpus. *Ex parte*

*Young*, 418 S.W.2d 824, 826 (Tex. Crim. App. 1967). Applicant entered into a plea agreement

whereby he pleaded guilty to two charges of sexual assault of a child, and two charges of improper

relationship between an educator and a student. He was sentenced to twenty years' imprisonment

for each charge, with the sentences in two of the four charges running consecutively, and the other

two sentences running concurrently. He did not appeal his convictions.

Applicant contends, *inter alia*, that the trial court lacked jurisdiction to entertain the plea

agreement, that his pleas were not knowingly and voluntarily entered, and that his trial counsel rendered ineffective assistance because he failed to investigate and discover that one of the offenses to which Applicant pleaded guilty was not a separate crime at the time it was alleged to have been committed.

Applicant has alleged facts that, if true, might entitle him to relief. *Strickland v. Washington*, 466 U.S. 608 (1984), *Ex parte Lemke*, 13 S.W.3d 791,795-96 (Tex. Crim. App. 2000). In these circumstances, additional facts are needed. As we held in *Ex parte Rodriguez*, 334 S.W.2d 294, 294 (Tex. Crim. App. 1960), the trial court is the appropriate forum for findings of fact. The trial court shall order Applicant's trial counsel to provide an affidavit responding to Applicant's claim of ineffective assistance of counsel. The trial court may use any means set out in TEX. CODE CRIM. PROC. art. 11.07, § 3(d). In the appropriate case, the trial court may rely on its personal recollection. *Id.*

If the trial court elects to hold a hearing, it shall determine whether Applicant is indigent. If Applicant is indigent and wishes to be represented by counsel, the trial court shall appoint an attorney to represent Applicant at the hearing. TEX. CODE CRIM. PROC. art. 26.04.

The trial court shall make findings of fact as to whether Applicant's trial attorney was aware that the statute making an improper relationship between an educator and a student a crime was enacted in 2003. If counsel was aware of this fact, the trial court shall make findings as to why counsel allowed Applicant to plead guilty to the offense in cause number 5594, which was alleged to have been committed in 2001, prior to the effective date of Texas Penal Code §21.12. The trial court shall make findings as to whether the performance of Applicant's trial attorney was deficient and, if so, whether counsel's deficient performance prejudiced Applicant. The trial court shall also

3

make any other findings of fact and conclusions of law that it deems relevant and appropriate to the disposition of Applicant's claim for habeas corpus relief.

This application will be held in abeyance until the trial court has resolved the fact issues. The issues shall be resolved within 90 days of this order. If any continuances are granted, a copy of the order granting the continuance shall be sent to this Court. A supplemental transcript containing all affidavits and interrogatories or the transcription of the court reporter's notes from any hearing or deposition, along with the trial court's supplemental findings of fact and conclusions of law, shall be returned to this Court within 120 days of the date of this order. Any extensions of time shall be obtained from this Court.

Filed: June 22, 2011
Do not publish

3

RETAINED COUNSELS AFFIDAVIT


( 3 PAGES )

# IN THE COUR OF CRIMINAL APPEAL
## OF TEXAS

NOS. WR-75,934-01, WR-75-934-02, WR-75-934-03 & WR-75-934-04

### EX PARTE JAMES ALLEN PELLOAT, Applicant

## ON APPLICATIONS FOR WRITS OF HABEAS CORPUS
## CAUSE NOS. 5591, 5593, 5617 & 5594 IN THE 1-A JUDICIAL DISTRICT
## COURT FROM NEWTON COUNTY

## AFFIDAVIT OF WILLIAM S. MORIAN, JR.

BEFORE ME, the undersigned authority, on this day personally appeared William S. Morian, Jr., who being by me duly sworn under oath and affirmed as follows:

"My name is William S. Morian, Jr. As counsel for the Defendant, James Allen Pelloat, in each of the cases the subject of this Writ of Habeas Corpus, I advised my client of all legal aspects in these cases including the elements of each one of the crimes needed to be proven by the State beyond a reasonable doubt as well as the range of punishment for each of the alleged crimes. I also discussed with Mr. Pelloat the possibility of the convictions running consecutively in the event that he was found guilty on those charges.

4

"In Cause Nos. 5618 and 5594 involving improper relationship between an educator and a student under Section 21.12 of the Texas Penal Code, the dates of the offenses set forth in the indictments are obviously prior to the enactment date of Texas Penal Code Section 21.12. I do not have any independent recollection of any discussions with Mr. Pelloat about the enactment and effective date of Texas Penal Code Section 21.12. However, I did advised Mr. Pelloat that the exact date of the alleged offense did not have to be proven specifically as long it was proven that the alleged act occurred within the statute of limitations for the particular offense and before the date of the indictment. The statements of the victims were reviewed with Mr. Pelloat as was all other evidence. Specifically, the statement of Thomas Knighton which pertains to Cause No. 5594 stated that the last occurrence that involved him and Mr. Pelloat was on October 31, 2004, which would have been after the date of the enactment or affective date of Section 21.12 of the Texas Penal Code.

"Based on all evidence available to Mr. Pelloat and myself including the statements of all victims and Mr. Pelloat's confession, the decision was made by Mr. Pelloat with my advice to accept the plea offer in order to avoid the potential of a much more lengthy prison sentence if he were convicted on the charges and all sentences ordered to be run consecutively. If the charges under Section 21.12 of the Texas Penal Code were not prosecuted, I believe Mr. Pelloat would have still faced more than forty years if he were convicted and the sentences were ordered to run consecutively."

2

*5*



William S. Morian, Jr.

SUBSCRIBED AND SWORN TO before me by William S. Morian, Jr., on this the 29th day of July, 2011.

_____
Notary Public, State of Texas

Amy Jo delValle
Notary Public
State of Texas
My Comm. Expires 06-02-2013

3

6

TRIAL COURTS FINDINGS OF FACT


( 4 PAGES )

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

NOS. WR-75,934-01, WR-75,934-02, WR-75,934-03 & WR-75,934-04

## EX PARTE JAMES ALLEN PELLOAT, Applicant

### ON APPLICATION FOR A WRIT OF HABEAS CORPUS
### CAUSE NOS. ND 5591, 5593, 5617 & 5594 IN THE 1A JUDICIAL DISTRICT COURT
### FROM NEWTON COUNTY

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

Applicant filed an application for post conviction writ of habeas corpus. This Court is of the opinion that a hearing is not necessary and chooses to rely on affidavits and hereby enters the following Findings of Fact and Conclusions of Law.

## I. FINDINGS OF FACT

1. Applicant was indicted for six felony offenses:

   Cause Number 5591 – Improper Relationship Between Educator and Student

   Cause Number 5592 – Aggravated Sexual Assault

   Cause Number 5593 – Sexual Assault

   Cause Number 5594 – Improper Relationship Between Educator and Student

   Cause Number 5617 – Sexual Assault

   Cause Number 5618 – Improper Relationship Between Educator and Student.

2. Applicant entered into a plea bargain with the State and plead guilty to the following charges:

   Cause Number 5591 – Improper Relationship Between Educator and Student

7

Cause Number 5593 – Sexual Assault

Cause Number 5594 – Improper Relationship Between Educator and Student

Cause Number 5617 – Sexual Assault.

3. Cause numbers 5592 and 5618 were both dismissed.

4. Applicant was sentenced to twenty (20) years confinement on all four cases.

5. Cause number 5617 (Sexual Assault) was to run consecutive to the sentence in cause number 5593 (Sexual Assault). All other sentences would run concurrently.

6. The indictment in cause number 5594 alleged an offense date of November 7, 2001, which was prior to the enactment of the "Improper Relationship" statute. (Penal Code Section 21.12).

7. The date of offense reflected in the judgment and sentence in cause number 5594 was November 7, 2004. This date coincides with the offense dates alleged in cause numbers 5591 and 5593, which is after the enactment of Penal Code Section 21.12.

8. Evidence was provided Applicant's trial counsel pursuant to his motion for discovery, which included the victim's statement, Applicant's statement as well as other evidence, that indicated the conduct constituting the offense alleged in cause number 5594 continued until the time immediately prior to Applicant's arrest in 2004, after the enactment of Penal Code Section 21.12.

9. Applicant's trial counsel advised Applicant of all legal aspects in these cases including the elements of each one of the crimes needed to be proven by the State beyond a reasonable doubt as well as the range of punishment for each of the alleged crimes.

8

10. Applicant's trial counsel advised Applicant of the possibility of the convictions running consecutively in the event that he was found guilty.

11. Applicant's trial counsel advised Applicant that the exact date of the alleged offense did not have to be proven specifically as long as it was proven that the alleged act occurred within the statute of limitations for the particular offense and before the date of the indictment.

12. Applicant's trial counsel was aware of the effective date of the statute making an improper relationship between an educator and student a crime.

13. Applicant's trial counsel allowed Applicant to plead guilty to the offense in cause number 5594 because there was evidence that the prohibited conduct continued until 2004 and would have constituted an offense after the effective date of Texas Penal Code section 21.12.

14. Applicant's trial counsel further allowed Applicant to plead guilty to that offense because he believed he (Applicant) would have potentially received a much more lengthy prison sentence if convicted on all charges.

15. The sentence in cause number 5594 runs concurrent with other sentences imposed and therefore does not affect the amount of time Applicant will have to serve.

## II. CONCLUSIONS OF LAW

1. Applicant's plea was entered knowingly and voluntarily.

2. Applicant's trial counsel's conduct was not deficient conduct that fell below the standards of performance required of counsel in criminal cases.

3. Applicant's trial counsel did not render ineffective assistance of counsel.

9

4. Applicant has failed to meet his burden of proof by a preponderance of the evidence.

5. Applicant is not entitled to the relief requested in his Application for Writ of Habeas Corpus.

Having considered the evidence as set forth before this Court and in light of the foregoing Findings of Fact and Conclusions of Law, it is the opinion of this Court that the relief prayed for in this case be DENIED.

It is further ORDERED that copies of this document be served on the Applicant and counsel for the State.

Signed and entered on this _24_ day of _September_ , 2011.

_____
JEROME P. OWENS, JUDGE
1A JUDICIAL DISTRICT COURT
NEWTON COUNTY, TEXAS

10

COURT OF CRIMINAL APPEALS ORDER OF FEBRUARY 15, 2012


( 2    PAGES   )



# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. AP-76,779

### EX PARTE JAMES ALLEN PELLOAT, Applicant

### ON APPLICATION FOR WRIT OF HABEAS CORPUS
### CAUSE NO. 5594 IN THE JUDICIAL DISTRICT COURT 1A
### FROM NEWTON COUNTY

*Per curiam.*

### OPINION

Pursuant to the provisions of Article 11.07 of the Texas Code of Criminal Procedure, the clerk of the trial court transmitted to this Court this application for writ of habeas corpus. *Ex parte Young*, 418 S.W.2d 824, 826 (Tex. Crim. App. 1967). Applicant pleaded guilty pursuant to a "package" plea agreement to two charges of sexual assault of a child, and two charges of improper relationship between educator and student. Pursuant to the plea agreement, Applicant was sentenced to twenty years' imprisonment for each offense, with the sentences in cause numbers 5992 and 5617 to run consecutively, and the remaining sentences to run concurrently. He did not appeal his convictions.

Applicant contends, *inter alia*, that his plea was involuntary because trial counsel failed to advise him that one of the charges was not an offense at the time it was committed. We remanded this application to the trial court for findings of fact and conclusions of law.

Trial counsel and the trial prosecutor filed affidavits with the trial court. Based on those affidavits and the documents in the supplemental record, the trial court has determined that the complainant in the -03 case was no longer a student at the school where Applicant taught at the time the statute making improper relationship between educator and student an offense was enacted. Applicant is entitled to relief. *Ex parte Huerta*, 692 S.W.2d 681 (Tex. Crim. App. 1985).

Relief is granted. The judgment in Cause No. 5594 in the Judicial District Court 1A of Newton County is set aside. The remainder of the judgments and sentences stand pursuant to the plea agreement.

Copies of this opinion shall be sent to the Texas Department of Criminal Justice–Correctional Institutions Division and Pardons and Paroles Division.

Delivered: April 25, 2012
Do Not Publish

TRIAL COURTS SUPPLEMENTAL FINDINGS OF FACT


( 1 PAGE )

FILED FOR RECORD

'12 MAR -8 P 4: 20

ALLEN
DISTRICT CLERK
NEWTON COUNTY TEXAS
BY:_____

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

=====================
## NOS. WR-75,934-01, WR-75,934-02, WR-75,934-03 & WR-75,934-04
=====================

## EX PARTE JAMES ALLEN PELLOAT, Applicant

=========================================================
## ON APPLICATION FOR A WRIT OF HABEAS CORPUS
## CAUSE NOS. ND 5591, 5593, 5594 & 5617 IN THE 1A JUDICIAL DISTRICT COURT
## FROM NEWTON COUNTY
=========================================================

## SUPPLEMENTAL FINDINGS OF FACT

These Findings of Fact supplement the Findings of Fact and Conclusions of Law previously filed with this Court.

## I. FINDINGS OF FACT

1. The State has elected to waive the illegal portion of the plea agreement of Applicant (Judgment and Sentence in Cause Number 5594) and maintain and adhere to the remainder of the plea agreement (Judgment and Sentence in Cause Numbers 5591, 5593 and 5617).

2. The State accepts the plea agreement as modified.

3. The District Clerk of Newton County, Texas shall notify the Court of Criminal Appeals of Texas of the Court's Supplemental Findings of Fact.

Signed and entered on this ____8____ day of ___March_____, 2012.

JEROME P. OWENS, JUDGE
1A JUDICIAL DISTRICT COURT
NEWTON COUNTY, TEXAS

13

APPLICANTS SUBMITTED AMENDMENTS TO ORIGINAL HABEAS CORPUS


( 3 PAGES )

AMENDMENT TO ORIGINAL HABEAS CORPUS

COPY
ORIGINAL FILED
JUL 11 2012

Case No. <u>ND-5591-A</u>
(The Clerk of the convicting court will fill this line in.)

BREE ALLEN .
District Clerk, Newton Co.

## IN THE COURT OF CRIMINAL APPEALS OF TEXAS

## APPLICATION FOR A WRIT OF HABEAS CORPUS
## SEEKING RELIEF FROM FINAL FELONY CONVICTION
## UNDER CODE OF CRIMINAL PROCEDURE, ARTICLE 11.07

NAME: <u>James Allen Pelloat</u>

DATE OF BIRTH: <u>April 20, 1947</u>
PLACE OF CONFINEMENT: <u>Stringfellow Unit TDCJ</u>

TDCJ-CID NUMBER: <u>1289716</u>         SID NUMBER: <u>07415408</u>

(1)    This application concerns (check all that apply):

☒    a conviction            ☐    parole

☐    a sentence              ☐    mandatory supervision

☐    time credit             ☐    out-of-time appeal or petition for
                                   discretionary review

(2)    **What district court entered the judgment of the conviction you want relief from?**
       (Include the court number and county.)

. 1-A ~~Judicial District Court- Newton County~~

(3)    **What was the case number in the trial court?**

       5591

(4)    **What was the name of the trial judge?**

       Monte Lawlis

Applicant's Copy

1

Revised: September 1, 2011                              ATC-11.07

14

AMENDMENT TO ORIGINAL HABEAS CORPUS

COPY
ORIGINAL FILED
JUL 11 2012
BREE ALLEN
District Clerk, Newton Co.

Case No. <u>ND-5593-A</u>

(The Clerk of the convicting court will fill this line in.)

## IN THE COURT OF CRIMINAL APPEALS OF TEXAS

## APPLICATION FOR A WRIT OF HABEAS CORPUS
## SEEKING RELIEF FROM FINAL FELONY CONVICTION
## UNDER CODE OF CRIMINAL PROCEDURE, ARTICLE 11.07

NAME: <u>James Allen Pelloat</u>

DATE OF BIRTH: <u>April 20, 1947</u>

PLACE OF CONFINEMENT: <u>Stringfellow Unit TDCJ</u>

TDCJ-CID NUMBER: <u>1289716</u>    SID NUMBER: <u>07415408</u>

(1)    This application concerns (check all that apply):

☒    a conviction          ☐    parole

☐    a sentence          ☐    mandatory supervision

☐    time credit          ☐    out-of-time appeal or petition for discretionary review

(2)    What district court entered the judgment of the conviction you want relief from? (Include the court number and county.)

   <u>1-A Judicial District Court- Newton County</u>

(3)    What was the case number in the trial court?

   <u>ND- 5593</u>

(4)    What was the name of the trial judge?

   <u>Monte Lawlis</u>

Applicant's Copy

1

AMENDMENT TO ORIGINAL HABEAUS CORPUS



COPY

ORIGINAL FILED

JUL 1 1 2012

Case No. ND 5617-A

(The Clerk of the convicting court will fill this line in.)

BREE ALLEN
District Clerk, Newton Co.

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

## APPLICATION FOR A WRIT OF HABEAS CORPUS
## SEEKING RELIEF FROM FINAL FELONY CONVICTION
## UNDER CODE OF CRIMINAL PROCEDURE, ARTICLE 11.07

NAME: James Allen Pelloat

DATE OF BIRTH: April 20, 1947

PLACE OF CONFINEMENT: Stringfellow Unit, TDCJ

TDCJ-CID NUMBER: 1289716         SID NUMBER: 07415408

(1)     This application concerns (check all that apply):

   ☒x  a conviction       ☐  parole

   ☐  a sentence        ☐  mandatory supervision

   ☐  time credit        ☐  out-of-time appeal or petition for
                    discretionary review

(2)     What district court entered the judgment of the conviction you want relief from?
(Include the court number and county.)

   1-A Judicial District Court- Newton County

(3)     What was the case number in the trial court?

   ND-5617

(4)     What was the name of the trial judge?

   Monte Lawlis

Applicant's copy

1

16

APPLICANTS LETTERS TO DISTRICT CLERK


( 2 PAGES )

10-18-12

James Pelton 1389716
Stringfellow Unit
1300 FM 655
Rosharon, Texas, 77583

Bris Allen
Newton County District Clerk
P.O. Box 535
Newton, Texas, 75966

Dear Ms. Allen

On July 11, 2012 you filed my Amended M P M original 11.07. I know that once it is received 11 goes to the District Attorney and he has a set number of days to act on it and then it is sent to the judge for him to act on it and then it is sent to the court of criminal appeals. Could you tell me where my Amended 11.07 is now and/or if it will be sent to the Court of Criminal Appeals?

Thank you for your help.

Sincerely
James Pelton

James Pelloat, 1289216
Stringfellow Unit
1200 FM 655
Rosharon, Texas, 77583

11/12/12

Brie Allen
Newton County District Clerk
P.O. Box 535
Newton, County, 75966

Dear Ms. Allen,

Approximately 1 month ago, I wrote to you concerning the status of my amended 11.07 form that you received and filed on July 11, 2012, because of information that I received from you in May, 2012 that had been sent to the Court of Criminal Appeals in September 2011. There are at least 3 fatal variances in the indictment and judgment of case number 5617. This needs to be addressed either by Newton County, the Texas Court of Criminal Appeals or the Federal Court system. Please respond to this my second request for information.

Sincerely

James A. Pelloat

18

LAFLER V. COOPER, 132 S.Ct. 1376 (2012)


(   24   PAGES   )

132 S.Ct. 1376, 182 L.Ed.2d 398, 80 USLW 4244, 12 Cal. Daily Op. Serv. 3299, 2012 Daily Journal D.A.R. 3726, 23 Fla. L. Weekly Fed. S 203
(Cite as: 132 S.Ct. 1376)

Supreme Court of the United States
Blaine LAFLER, Petitioner
v.
Anthony COOPER.

No. 10-209.
Argued Oct. 31, 2011.
Decided March 21, 2012.

**Background:** After affirmance of convictions and sentence, 2005 WL 599740, petitioner, a state inmate who had been convicted of several offenses, including assault with intent to murder, after rejecting a guilty plea based on the advice of counsel, and who had been denied state postconviction relief, sought federal habeas corpus relief, claiming ineffective assistance of counsel. The United States District Court for the Eastern District of Michigan, Denise Page Hood, J., 2009 WL 817712, conditionally granted the petition, requiring the state to offer petitioner the plea deal that he would have taken but for his attorney's ineffective assistance. State appealed. The United States Court of Appeals for the Sixth Circuit, Cornelia G. Kennedy, Circuit Judge, 376 Fed.Appx. 563, affirmed. State's petition for certiorari was granted.

**Holdings:** The Supreme Court, Justice Kennedy, held that:
(1) petitioner was prejudiced by counsel's deficient performance in advising petitioner to reject the plea offer and go to trial, and
(2) proper remedy for counsel's ineffective assistance was to order the State to reoffer the plea agreement, and then, if petitioner accepted the offer, the state trial court could exercise its discretion regarding whether to resentence.

Vacated and remanded.

Justice Scalia filed a dissenting opinion, which Justice Thomas joined and Chief Justice Roberts

joined in part.

Justice Alito filed a dissenting opinion.

West Headnotes

**[1] Criminal Law 110 ⬅1731**

110 Criminal Law
   110XXXI Counsel
      110XXXI(B) Right of Defendant to Counsel
         110XXXI(B)2 Stage of Proceedings as Affecting Right
         110k1731 k. Guilty pleas; plea negotiations, plea hearings, motion to withdraw. Most Cited Cases
   Defendants' Sixth Amendment right to counsel extends to the plea-bargaining process. U.S.C.A. Const.Amend. 6.

**[2] Criminal Law 110 ⬅1920**

110 Criminal Law
   110XXXI Counsel
      110XXXI(C) Adequacy of Representation
         110XXXI(C)2 Particular Cases and Issues
         110k1920 k. Plea. Most Cited Cases
   During plea negotiations defendants are entitled to the effective assistance of competent counsel. U.S.C.A. Const.Amend. 6.

**[3] Criminal Law 110 ⬅1920**

110 Criminal Law
   110XXXI Counsel
      110XXXI(C) Adequacy of Representation
         110XXXI(C)2 Particular Cases and Issues
         110k1920 k. Plea. Most Cited Cases
   The two-part *Strickland v. Washington* test for ineffective assistance of counsel applies to challenges to guilty pleas based on ineffective assistance of counsel. U.S.C.A. Const.Amend. 6.

**[4] Criminal Law 110 ⬅1882**



© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

132 S.Ct. 1376, 182 L.Ed.2d 398, 80 USLW 4244, 12 Cal. Daily Op. Serv. 3299, 2012 Daily Journal D.A.R. 3726, 23 Fla. L. Weekly Fed. S 203
(Cite as: 132 S.Ct. 1376)

110 Criminal Law
   110XXXI Counsel
      110XXXI(C) Adequacy of Representation
         110XXXI(C)1 In General
            110k1879 Standard of Effective Assistance in General
               110k1882 k. Deficient representation in general. Most Cited Cases

The performance prong of the *Strickland* test for ineffective assistance of counsel requires a defendant to show that counsel's representation fell below an objective standard of reasonableness. U.S.C.A. Const.Amend. 6.

**[5] Criminal Law 110 ☞1883**

110 Criminal Law
   110XXXI Counsel
      110XXXI(C) Adequacy of Representation
         110XXXI(C)1 In General
            110k1879 Standard of Effective Assistance in General
               110k1883 k. Prejudice in general. Most Cited Cases

To establish the prejudice prong of the *Strickland* test for ineffective assistance of counsel, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. U.S.C.A. Const.Amend. 6.

**[6] Criminal Law 110 ☞1920**

110 Criminal Law
   110XXXI Counsel
      110XXXI(C) Adequacy of Representation
         110XXXI(C)2 Particular Cases and Issues
            110k1920 k. Plea. Most Cited Cases

In the context of pleas, to establish the prejudice prong of the *Strickland* test for ineffective assistance of counsel, a defendant must show the outcome of the plea process would have been different with competent advice. U.S.C.A. Const.Amend. 6.

**[7] Criminal Law 110 ☞1920**

110 Criminal Law
   110XXXI Counsel
      110XXXI(C) Adequacy of Representation
         110XXXI(C)2 Particular Cases and Issues
            110k1920 k. Plea. Most Cited Cases

In the context of a defendant having rejected a plea offer from the prosecution based on the deficient advice of counsel and having stood trial, the defendant, to establish the prejudice prong of the *Strickland* test for ineffective assistance of counsel, must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court, i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances, and also that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed. U.S.C.A. Const.Amend. 6.

**[8] Criminal Law 110 ☞1718**

110 Criminal Law
   110XXXI Counsel
      110XXXI(B) Right of Defendant to Counsel
         110XXXI(B)2 Stage of Proceedings as Affecting Right
            110k1718 k. Critical stages. Most Cited Cases

The Sixth Amendment requires effective assistance of counsel at critical stages of a criminal proceeding. U.S.C.A. Const.Amend. 6.

**[9] Criminal Law 110 ☞1718**

110 Criminal Law
   110XXXI Counsel
      110XXXI(B) Right of Defendant to Counsel
         110XXXI(B)2 Stage of Proceedings as Affecting Right
            110k1718 k. Critical stages. Most Cited Cases

The Sixth Amendment's protections against ineffective assistance of counsel are not designed

20

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

132 S.Ct. 1376, 182 L.Ed.2d 398, 80 USLW 4244, 12 Cal. Daily Op. Serv. 3299, 2012 Daily Journal D.A.R. 3726, 23 Fla. L. Weekly Fed. S.203
(Cite as: 132 S.Ct. 1376)

simply to protect the trial, even though counsel's absence in critical stages of a criminal proceeding may derogate from the accused's right to a fair trial. U.S.C.A. Const.Amend. 6.

**[10] Criminal Law 110 ☞1718**

110 Criminal Law
    110XXXI Counsel
        110XXXI(B) Right of Defendant to Counsel
            110XXXI(B)2 Stage of Proceedings as Affecting Right
                110k1718 k. Critical stages. Most Cited Cases

The constitutional guarantee of effective assistance of counsel applies to pretrial critical stages that are part of the whole course of a criminal proceeding, a proceeding in which defendants cannot be presumed to make critical decisions without counsel's advice. U.S.C.A. Const.Amend. 6.

**[11] Criminal Law 110 ☞1967**

110 Criminal Law
    110XXXI Counsel
        110XXXI(C) Adequacy of Representation
            110XXXI(C)2 Particular Cases and Issues
                110k1966 Appeal
                    110k1967 k. In general. Most Cited Cases

Defendants have a right to effective assistance of counsel on appeal, even though that cannot in any way be characterized as part of the trial. U.S.C.A. Const.Amend. 6.

**[12] Criminal Law 110 ☞1953**

110 Criminal Law
    110XXXI Counsel
        110XXXI(C) Adequacy of Representation
            110XXXI(C)2 Particular Cases and Issues
                110k1952 Sentencing in General
                    110k1953 k. In general. Most Cited Cases

**Criminal Law 110 ☞1959**

110 Criminal Law
    110XXXI Counsel
        110XXXI(C) Adequacy of Representation
            110XXXI(C)2 Particular Cases and Issues
                110k1958 Death Penalty
                    110k1959 k. In general. Most Cited Cases

A right to effective assistance of counsel exists during sentencing in both noncapital and capital cases. U.S.C.A. Const.Amend. 6.

**[13] Criminal Law 110 ☞1953**

110 Criminal Law
    110XXXI Counsel
        110XXXI(C) Adequacy of Representation
            110XXXI(C)2 Particular Cases and Issues
                110k1952 Sentencing in General
                    110k1953 k. In general. Most Cited Cases

Even though sentencing does not concern the defendant's guilt or innocence, ineffective assistance of counsel during a sentencing hearing can result in prejudice, under the prejudice prong of the *Strickland* test for ineffective assistance of counsel, because any amount of additional jail time has Sixth Amendment significance. U.S.C.A. Const.Amend. 6.

**[14] Criminal Law 110 ☞1920**

110 Criminal Law
    110XXXI Counsel
        110XXXI(C) Adequacy of Representation
            110XXXI(C)2 Particular Cases and Issues
                110k1920 k. Plea. Most Cited Cases

Even if the trial itself is free from constitutional flaw, the defendant who, based on the deficient performance of counsel, goes to trial instead of taking a more favorable plea may be prejudiced, as element of ineffective assistance of counsel, from either a conviction on more serious counts or the imposition of a more severe sentence. U.S.C.A. Const.Amend. 6.

**[15] Criminal Law 110 ☞1924**

132 S.Ct. 1376, 182 L.Ed.2d 398, 80 USLW 4244, 12 Cal. Daily Op. Serv. 3299, 2012 Daily Journal D.A.R. 3726, 23 Fla. L. Weekly Fed. S 203
(Cite as: 132 S.Ct. 1376)

110 Criminal Law
110XXXI Counsel
110XXXI(C) Adequacy of Representation
110XXXI(C)2 Particular Cases and Issues
110k1921 Introduction of and Objections to Evidence at Trial
110k1924 k. Presentation of witnesses. Most Cited Cases

A defendant cannot show prejudice, under the prejudice prong of the *Strickland* test for ineffective assistance of counsel, based on counsel's refusal to present perjured testimony, even if such testimony might have affected the outcome of the case. U.S.C.A. Const.Amend. 6.

**[16] Criminal Law 110 ⟲1920**

110 Criminal Law
110XXXI Counsel
110XXXI(C) Adequacy of Representation
110XXXI(C)2 Particular Cases and Issues
110k1920 k. Plea. Most Cited Cases

If a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it, and if that right is denied, prejudice can be shown, under the prejudice prong of the *Strickland* test for ineffective assistance of counsel, if loss of the plea opportunity led to a trial resulting in a conviction on more serious charges or the imposition of a more severe sentence. U.S.C.A. Const.Amend. 6.

**[17] Criminal Law 110 ⟲273(2)**

110 Criminal Law
110XV Pleas
110k272 Plea of Guilty
110k273 In General
110k273(2) k. Right to plead guilty; mental competence. Most Cited Cases

Defendants have no right to be offered a plea, nor a federal right that the judge accept it.

**[18] Constitutional Law 92 ⟲1050**

92 Constitutional Law

92VII Constitutional Rights in General
92VII(A) In General
92k1050 k. In general. Most Cited Cases

When a State opts to act in a field where its action has significant discretionary elements, it must nonetheless act in accord with the dictates of the Constitution.

**[19] Criminal Law 110 ⟲1880**

110 Criminal Law
110XXXI Counsel
110XXXI(C) Adequacy of Representation
110XXXI(C)1 In General
110k1879 Standard of Effective Assistance in General
110k1880 k. In general. Most Cited Cases

The benchmark for judging any claim of ineffective assistance of counsel must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. U.S.C.A. Const.Amend. 6.

**[20] Criminal Law 110 ⟲1870**

110 Criminal Law
110XXXI Counsel
110XXXI(C) Adequacy of Representation
110XXXI(C)1 In General
110k1870 k. In general. Most Cited Cases

The constitutional rights of criminal defendants are granted to the innocent and the guilty alike, and consequently, the guarantee of effective assistance of counsel does not belong solely to the innocent or attach only to matters affecting the determination of actual guilt. U.S.C.A. Const.Amend. 6.

**[21] Criminal Law 110 ⟲1862**

110 Criminal Law
110XXXI Counsel
110XXXI(B) Right of Defendant to Counsel
110XXXI(B)11 Deprivation or Allowance

**22**

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

132 S.Ct. 1376, 182 L.Ed.2d 398, 80 USLW 4244, 12 Cal. Daily Op. Serv. 3299, 2012 Daily Journal D.A.R. 3726, 23 Fla. L. Weekly Fed. S 203
(Cite as: 132 S.Ct. 1376)

of Counsel

110k1860 Effect of Representation or Deprivation of Rights

110k1862 k. Remedies. Most Cited Cases

Sixth Amendment remedies should be tailored to the injury suffered from the constitutional violation and should not unnecessarily infringe on competing interests, and thus, a remedy must neutralize the taint of a constitutional violation, while at the same time not grant a windfall to the defendant or needlessly squander the considerable resources the State properly invested in the criminal prosecution. U.S.C.A. Const.Amend. 6.

**[22] Criminal Law 110 ⟸1920**

110 Criminal Law
110XXXI Counsel
110XXXI(C) Adequacy of Representation
110XXXI(C)2 Particular Cases and Issues
110k1920 k. Plea. Most Cited Cases

When determining the remedy for ineffective assistance of counsel relating to defendant's rejection of a plea offer, if the sole advantage a defendant would have received under the plea is a lesser sentence, which is typically the case when the charges that would have been admitted as part of the plea bargain are the same as the charges the defendant was convicted of after trial, the court may conduct an evidentiary hearing to determine whether the defendant has shown a reasonable probability that but for counsel's errors he would have accepted the plea, and if the showing is made, the court may exercise discretion in determining whether the defendant should receive the term of imprisonment the government offered in the plea, the sentence he received at trial, or something in between. U.S.C.A. Const.Amend. 6.

**[23] Criminal Law 110 ⟸1920**

110 Criminal Law
110XXXI Counsel
110XXXI(C) Adequacy of Representation
110XXXI(C)2 Particular Cases and Issues

110k1920 k. Plea. Most Cited Cases

For purposes of determining the remedy for ineffective assistance of counsel relating to defendant's rejection of a plea offer, if an offer was for a guilty plea to a count or counts less serious than the ones for which a defendant was convicted after trial, or if a mandatory sentence confines a judge's sentencing discretion after trial, the proper exercise of discretion to remedy the constitutional injury may be to require the prosecution to reoffer the plea proposal, and once this has occurred, the judge can then exercise discretion in deciding whether to vacate the conviction from trial and accept the plea or leave the conviction undisturbed. U.S.C.A. Const.Amend. 6.

**[24] Criminal Law 110 ⟸1920**

110 Criminal Law
110XXXI Counsel
110XXXI(C) Adequacy of Representation
110XXXI(C)2 Particular Cases and Issues
110k1920 k. Plea. Most Cited Cases

A court, in determining the remedy for ineffective assistance of counsel relating to defendant's rejection of a plea offer, may take account of a defendant's earlier expressed willingness, or unwillingness, to accept responsibility for his or her actions. U.S.C.A. Const.Amend. 6.

**[25] Criminal Law 110 ⟸1920**

110 Criminal Law
110XXXI Counsel
110XXXI(C) Adequacy of Representation
110XXXI(C)2 Particular Cases and Issues
110k1920 k. Plea. Most Cited Cases

In determining the remedy for ineffective assistance of counsel relating to defendant's rejection of a plea offer, the precise positions the defendant and the prosecution prior to the rejection of the plea offer can be consulted in finding a remedy that does not require the prosecution to incur the expense of conducting a new trial. U.S.C.A. Const.Amend. 6.

**[26] Habeas Corpus 197 ⟸452**

132 S.Ct. 1376, 182 L.Ed.2d 398, 80 USLW 4244, 12 Cal. Daily Op. Serv. 3299, 2012 Daily Journal D.A.R. 3726, 23 Fla. L. Weekly Fed. S 203
(Cite as: 132 S.Ct. 1376)

197 Habeas Corpus
    197II Grounds for Relief; Illegality of Restraint
        197II(A) Ground and Nature of Restraint
            197k450 Federal Review of State or Territorial Cases
                197k452 k. Federal or constitutional questions. Most Cited Cases

A decision is "contrary to clearly established law," for purposes of the Antiterrorism and Effective Death Penalty Act (AEDPA), under which a federal court may not grant a petition for a writ of habeas corpus unless the state court's adjudication on the merits was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States, if the state court applies a rule that contradicts the governing law set forth in Supreme Court cases. 28 U.S.C.A. § 2254(d)(1).

**[27] Criminal Law 110 ⚖1920**

110 Criminal Law
    110XXXI Counsel
        110XXXI(C) Adequacy of Representation
            110XXXI(C)2 Particular Cases and Issues
                110k1920 k. Plea. Most Cited Cases

An inquiry into whether the rejection of a plea is knowing and voluntary is not the correct means by which to address a claim of ineffective assistance of counsel, relating to a plea. U.S.C.A. Const.Amend. 6.

**[28] Criminal Law 110 ⚖1920**

110 Criminal Law
    110XXXI Counsel
        110XXXI(C) Adequacy of Representation
            110XXXI(C)2 Particular Cases and Issues
                110k1920 k. Plea. Most Cited Cases

Defendant was prejudiced, as element of ineffective assistance of counsel, by counsel's deficient performance in advising defendant to reject a plea offer from the State and go to trial because counsel allegedly believed that defendant's intent to murder, for purposes of charge under Michigan law of assault with intent to murder, could not be established since the victim had been shot below the waist; but for counsel's deficient performance, there was a reasonable probability that defendant and the trial court would have accepted the guilty plea, and as a result of not accepting the plea offer and being convicted at trial, defendant received a minimum sentence three and one-half times greater than he would have received under the plea. U.S.C.A. Const.Amend. 6.

**[29] Criminal Law 110 ⚖1920**

110 Criminal Law
    110XXXI Counsel
        110XXXI(C) Adequacy of Representation
            110XXXI(C)2 Particular Cases and Issues
                110k1920 k. Plea. Most Cited Cases

Proper remedy for counsel's ineffective assistance in advising defendant to reject a plea offer from the State and go to trial because counsel allegedly believed that defendant's intent to murder, for purposes of charge under Michigan law of assault with intent to murder, could not be established since the victim had been shot below the waist, was to order the State to reoffer the plea agreement, and then, presuming defendant accepted the offer, the state trial court could exercise its discretion in determining whether to vacate the convictions and resentence defendant pursuant to the plea agreement, to vacate only some of the convictions and resentence defendant accordingly, or to leave the convictions and sentence from trial undisturbed. U.S.C.A. Const.Amend. 6; MCR 6.302(C)(3).

*\*1380 Syllabus* [FN*]

FN* The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States v. Detroit Timber & Lumber Co.,* 200 U.S. 321, 337, 26 S.Ct. 282, 50 L.Ed. 499.

Respondent was charged under Michigan law with assault with intent to murder and three other offenses. The prosecution offered to dismiss two of

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

132 S.Ct. 1376, 182 L.Ed.2d 398, 80 USLW 4244, 12 Cal. Daily Op. Serv. 3299, 2012 Daily Journal D.A.R. 3726, 23 Fla. L. Weekly Fed. S 203
(Cite as: 132 S.Ct. 1376)

the charges and to recommend a 51–to–85–month sentence on the other two, in exchange for a guilty plea. In a communication with the court, respondent admitted his guilt and expressed a willingness to accept the offer. But he rejected the offer, allegedly after his attorney convinced him that the prosecution would be unable to establish intent to murder because the victim had been shot below the waist. At trial, respondent was convicted on all counts and received a mandatory minimum 185–to–360–month sentence. In a subsequent hearing, the state trial court rejected respondent's claim that his attorney's advice to reject the plea constituted ineffective assistance. The Michigan Court of Appeals affirmed, rejecting the ineffective-assistance claim on the ground that respondent knowingly and intelligently turned down the plea offer and chose to go to trial. Respondent renewed his claim in federal habeas. Finding that the state appellate court had unreasonably applied the constitutional effective-assistance standards laid out in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, and *Hill v. Lockhart,* 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203, the District Court granted a conditional writ and ordered specific performance of the original plea offer. The Sixth Circuit affirmed. Applying *Strickland,* it found that counsel had provided deficient performance by advising respondent of an incorrect legal rule, and that respondent suffered prejudice because he lost the opportunity to take the more favorable sentence offered in the plea.

*Held* :

1. Where counsel's ineffective advice led to an offer's rejection, and where the prejudice alleged is having to stand trial, a defendant must show that but for the ineffective advice, there is a reasonable probability that the plea offer would have been presented to the court, that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the actual judgment and sentence imposed. Pp. 1383 – 1388.

(a) Because the parties agree that counsel's performance was deficient, the only question is how to apply *Strickland* 's prejudice test where ineffective assistance results in a rejection of the plea offer and the defendant is convicted at the ensuing trial. Pp. 1383 – 1384.

(b) In that context, the *Strickland* prejudice test requires a defendant to show a reasonable possibility that the outcome of the plea process would have been different with competent advice. The Sixth Circuit and other federal appellate courts have agreed with the *Strickland* prejudice test for rejected pleas adopted here by this Court. Petitioner and the Solicitor General propose a narrow view—that *Strickland* prejudice cannot arise from plea bargaining if the defendant is later convicted at a fair trial—but their reasoning is unpersuasive. First, they claim that the Sixth Amendment's sole purpose is to protect the right to a fair trial, but the Amendment actually requires effective assistance at critical stages of a *1381 criminal proceeding, including pretrial stages. This is consistent with the right to effective assistance on appeal, see, *e.g., Halbert v. Michigan,* 545 U.S. 605, 125 S.Ct. 2582, 162 L.Ed.2d 552, and the right to counsel during sentencing, see, *e.g., Glover v. United States,* 531 U.S. 198, 203–204, 121 S.Ct. 696, 148 L.Ed.2d 604. This Court has not followed a rigid rule that an otherwise fair trial remedies errors not occurring at trial, but has instead inquired whether the trial cured the particular error at issue. See, *e.g., Vasquez v. Hillery,* 474 U.S. 254, 263, 106 S.Ct. 617, 88 L.Ed.2d 598. Second, this Court has previously rejected petitioner's argument that *Lockhart v. Fretwell,* 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180, modified *Strickland* and does so again here. *Fretwell* and *Nix v. Whiteside,* 475 U.S. 157, 106 S.Ct. 988, 89 L.Ed.2d 123, demonstrate that "it would be unjust to characterize the likelihood of a different outcome as legitimate 'prejudice,' " *Williams v. Taylor,* 529 U.S. 362, 391–392, 120 S.Ct. 1495, 146 L.Ed.2d 389, where defendants would receive a windfall as a result of the application of an incorrect legal principle or a defense strategy outside the law. Here, however, respondent seeks relief

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

132 S.Ct. 1376, 182 L.Ed.2d 398, 80 USLW 4244, 12 Cal. Daily Op. Serv. 3299, 2012 Daily Journal D.A.R. 3726, 23 Fla. L. Weekly Fed. S 203
(Cite as: 132 S.Ct. 1376)

from counsel's failure to meet a valid legal standard. Third, petitioner seeks to preserve the conviction by arguing that the Sixth Amendment's purpose is to ensure a conviction's reliability, but this argument fails to comprehend the full scope of the Sixth Amendment and is refuted by precedent. Here, the question is the fairness or reliability not of the trial but of the processes that preceded it, which caused respondent to lose benefits he would have received but for counsel's ineffective assistance. Furthermore, a reliable trial may not foreclose relief when counsel has failed to assert rights that may have altered the outcome. See *Kimmelman v. Morrison,* 477 U.S. 365, 379, 106 S.Ct. 2574, 91 L.Ed.2d 305. Petitioner's position that a fair trial wipes clean ineffective assistance during plea bargaining also ignores the reality that criminal justice today is for the most part a system of pleas, not a system of trials. See *Missouri v. Frye,* ——U.S. ——, 132 S.Ct. 1399, —— L.Ed.2d ——. Pp. 1384 – 1388.

2. Where a defendant shows ineffective assistance has caused the rejection of a plea leading to a more severe sentence at trial, the remedy must "neutralize the taint" of a constitutional violation, *United States v. Morrison,* 449 U.S. 361, 365, 101 S.Ct. 665, 66 L.Ed.2d 564, but must not grant a windfall to the defendant or needlessly squander the resources the State properly invested in the criminal prosecution, see *United States v. Mechanik,* 475 U.S. 66, 72, 106 S.Ct. 938, 89 L.Ed.2d 50. If the sole advantage is that the defendant would have received a lesser sentence under the plea, the court should have an evidentiary hearing to determine whether the defendant would have accepted the plea. If so, the court may exercise discretion in determining whether the defendant should receive the term offered in the plea, the sentence received at trial, or something in between. However, resentencing based on the conviction at trial may not suffice, *e.g.,* where the offered guilty plea was for less serious counts than the ones for which a defendant was convicted after trial, or where a mandatory sentence confines a judge's sentencing discretion. In these circumstances, the proper remedy may be to require the prosecution to reoffer the plea. The judge can then exercise discretion in deciding whether to vacate the conviction from trial and accept the plea, or leave the conviction undisturbed. In either situation, a court must weigh various factors. Here, it suffices to give two relevant considerations. First, a court may take account of a defendant's earlier *1382 expressed willingness, or unwillingness, to accept responsibility for his or her actions. Second, it is not necessary here to decide as a constitutional rule that a judge is required to disregard any information concerning the crime discovered after the plea offer was made. Petitioner argues that implementing a remedy will open the floodgates to litigation by defendants seeking to unsettle their convictions, but in the 30 years that courts have recognized such claims, there has been no indication that the system is overwhelmed or that defendants are receiving windfalls as a result of strategically timed *Strickland* claims. In addition, the prosecution and trial courts may adopt measures to help ensure against meritless claims. See *Frye, ante,* at ——, 132 S.Ct. 1399. Pp. 1388 – 1390.

3. This case arises under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), but because the Michigan Court of Appeals' analysis of respondent's ineffective-assistance-of-counsel claim was contrary to clearly established federal law, AEDPA presents no bar to relief. Respondent has satisfied *Strickland* 's two-part test. The parties concede the fact of deficient performance. And respondent has shown that but for that performance there is a reasonable probability he and the trial court would have accepted the guilty plea. In addition, as a result of not accepting the plea and being convicted at trial, he received a minimum sentence 3 & half; times greater than he would have received under the plea. As a remedy, the District Court ordered specific performance of the plea agreement, but the correct remedy is to order the State to reoffer the plea. If respondent accepts the offer, the state trial court can exercise its discretion in determining whether to vacate respondent's convictions and resentence pursuant to the plea agreement, to vacate

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

132 S.Ct. 1376, 182 L.Ed.2d 398, 80 USLW 4244, 12 Cal. Daily Op. Serv. 3299, 2012 Daily Journal D.A.R. 3726, 23 Fla. L. Weekly Fed. S 203
(Cite as: 132 S.Ct. 1376)

only some of the convictions and resentence accordingly, or to leave the conviction and sentence resulting from the trial undisturbed. Pp. 1390 – 1391.

376 Fcd.Appx. 563, vacated and remanded.

KENNEDY, J., delivered the opinion of the Court, in which GINSBURG, BREYER, SOTOMAYOR, and KAGAN, JJ., joined. SCALIA, J., filed a dissenting opinion, in which THOMAS, J., joined, and in which ROBERTS, C.J., joined as to all but Part IV. ALITO, J., filed a dissenting opinion.

John J. Bursch, Solicitor General, for Petitioner.

William M. Jay, for the United States, as amicus curiae, by special leave of the Court, supporting the Petitioner.

Valerie R. Newman, Detroit, MI, appointed by this Court, for the Respondent.

Bill Schuette, Attorney General, John J. Bursch, Michigan Solicitor General, Counsel of Record, Lansing, MI, B. Eric Restuccia, Michigan Deputy Solicitor General, Joel D. McGormley, Appellate Division Chief, for Petitioner.

Jeffrey T. Green, Karen S. Smith, Brian A. Fox, Sidley Austin LLP, Washington, DC, Sarah O'Rourke Schrup, Chicago, IL, Valerie R. Newman , Jacqueline J. McCann, State Appellate Defender Office, Detroit, MI, for Respondent Anthony Cooper.

For U.S. Supreme Court briefs, see:2011 WL 3663395 (Reply.Brief)2011 WL 2837936 (Resp.Brief)2011 WL 1523284 (Pet.Brief)

Justice KENNEDY delivered the opinion of the Court.

In this case, as in *Missouri v. Frye,* —— U.S. ——, 132 S.Ct. 1399, ——L.Ed.2d —— (2012), also decided today, a criminal *1383 defendant seeks a remedy when inadequate assistance of counsel caused nonacceptance of a plea offer and further proceedings led to a less favorable outcome. In *Frye,* defense counsel did not inform the defendant of the plea offer; and after the offer lapsed the defendant still pleaded guilty, but on more severe terms. Here, the favorable plea offer was reported to the client but, on advice of counsel, was rejected. In *Frye* there was a later guilty plea. Here, after the plea offer had been rejected, there was a full and fair trial before a jury. After a guilty verdict, the defendant received a sentence harsher than that offered in the rejected plea bargain. The instant case comes to the Court with the concession that counsel's advice with respect to the plea offer fell below the standard of adequate assistance of counsel guaranteed by the Sixth Amendment, applicable to the States through the Fourteenth Amendment.

I

On the evening of March 25, 2003, respondent pointed a gun toward Kali Mundy's head and fired. From the record, it is unclear why respondent did this, and at trial it was suggested that he might have acted either in self-defense or in defense of another person. In any event the shot missed and Mundy fled. Respondent followed in pursuit, firing repeatedly. Mundy was shot in her buttock, hip, and abdomen but survived the assault.

Respondent was charged under Michigan law with assault with intent to murder, possession of a firearm by a felon, possession of a firearm in the commission of a felony, misdemeanor possession of marijuana, and for being a habitual offender. On two occasions, the prosecution offered to dismiss two of the charges and to recommend a sentence of 51 to 85 months for the other two, in exchange for a guilty plea. In a communication with the court respondent admitted guilt and expressed a willingness to accept the offer. Respondent, however, later rejected the offer on both occasions, allegedly after his attorney convinced him that the prosecution would be unable to establish his intent to murder Mundy because she had been shot below the waist. On the first day of trial the prosecution offered a significantly less favorable plea deal, which re-

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 10

132 S.Ct. 1376, 182 L.Ed.2d 398, 80 USLW 4244, 12 Cal. Daily Op. Serv. 3299, 2012 Daily Journal D.A.R. 3726, 23 Fla. L. Weekly Fed. S 203
(Cite as: 132 S.Ct. 1376)

spondent again rejected. After trial, respondent was convicted on all counts and received a mandatory minimum sentence of 185 to 360 months' imprisonment.

In a so-called *Ginther* hearing before the state trial court, see *People v. Ginther*, 390 Mich. 436, 212 N.W.2d 922 (1973), respondent argued his attorney's advice to reject the plea constituted ineffective assistance. The trial judge rejected the claim, and the Michigan Court of Appeals affirmed. *People v. Cooper*, No. 250583, 2005 WL 599740 (Mar. 15, 2005) *(per curiam),* App. to Pet. for Cert. 44a. The Michigan Court of Appeals rejected the claim of ineffective assistance of counsel on the ground that respondent knowingly and intelligently rejected two plea offers and chose to go to trial. The Michigan Supreme Court denied respondent's application for leave to file an appeal. *People v. Cooper,* 474 Mich. 905, 705 N.W.2d 118 (2005) (table).

Respondent then filed a petition for federal habeas relief under 28 U.S.C. § 2254, renewing his ineffective-assistance-of-counsel claim. After finding, as required by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), that the Michigan Court of Appeals had unreasonably applied the constitutional standards for effective assistance of counsel laid out in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and \*1384*Hill v. Lockhart,* 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985), the District Court granted a conditional writ. *Cooper v. Lafler,* No. 06–11068, 2009 WL 817712, \*10 (E.D.Mich., Mar. 26, 2009), App. to Pet. for Cert. 41a–42a. To remedy the violation, the District Court ordered "specific performance of [respondent's] original plea agreement, for a minimum sentence in the range of fifty-one to eighty-five months." *Id.,* at \*9, App. to Pet. for Cert. 41a.

The United States Court of Appeals for the Sixth Circuit affirmed, 376 Fed.Appx. 563 (2010), finding "[e]ven full deference under AEDPA cannot salvage the state court's decision," *id.,* at 569.

Applying *Strickland,* the Court of Appeals found that respondent's attorney had provided deficient performance by informing respondent of "an incorrect legal rule," 376 Fed.Appx., at 570–571, and that respondent suffered prejudice because he "lost out on an opportunity to plead guilty and receive the lower sentence that was offered to him." *Id.,* at 573. This Court granted certiorari. 562 U.S. ——, 131 S.Ct. 856, 178 L.Ed.2d 622 (2011).

II

A

[1][2][3][4] Defendants have a Sixth Amendment right to counsel, a right that extends to the plea-bargaining process. *Frye, ante,* at 1386 – 1387, 132 S.Ct. 1399; see also *Padilla v. Kentucky,* 559 U.S. ——, ——, 130 S.Ct. 1473, 1486, 176 L.Ed.2d 284 (2010); *Hill, supra,* at 57, 106 S.Ct. 366. During plea negotiations defendants are "entitled to the effective assistance of competent counsel." *McMann v. Richardson,* 397 U.S. 759, 771, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970). In *Hill,* the Court held "the two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel." 474 U.S., at 58, 106 S.Ct. 366. The performance prong of *Strickland* requires a defendant to show " 'that counsel's representation fell below an objective standard of reasonableness.' " 474 U.S., at 57, 106 S.Ct. 366 (quoting *Strickland,* 466 U.S., at 688, 104 S.Ct. 2052). In this case all parties agree the performance of respondent's counsel was deficient when he advised respondent to reject the plea offer on the grounds he could not be convicted at trial. In light of this concession, it is unnecessary for this Court to explore the issue.

The question for this Court is how to apply *Strickland* 's prejudice test where ineffective assistance results in a rejection of the plea offer and the defendant is convicted at the ensuing trial.

B

[5][6] To establish *Strickland* prejudice a defendant must "show that there is a reasonable probability that, but for counsel's unprofessional errors,

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

132 S.Ct. 1376, 182 L.Ed.2d 398, 80 USLW 4244, 12 Cal. Daily Op. Serv. 3299, 2012 Daily Journal D.A.R. 3726, 23 Fla. L. Weekly Fed. S 203
(Cite as: 132 S.Ct. 1376)

the result of the proceeding would have different." *Id.,* at 694, 104 S.Ct. 2052. In the context of pleas a defendant must show the outcome of the plea process would have been different with competent advice. See *Frye, ante,* at 1388 – 1389, 132 S.Ct. 1399 (noting that *Strickland* 's inquiry, as applied to advice with respect to plea bargains, turns on "whether 'the result of the proceeding would have been different' " (quoting *Strickland, supra,* at 694, 104 S.Ct. 2052)); see also *Hill,* 474 U.S., at 59, 106 S.Ct. 366 ("The ... 'prejudice,' requirement ... focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process"). In *Hill,* when evaluating the petitioner's claim that ineffective assistance led to the improvident acceptance of a guilty plea, the Court required the petitioner to show "that there is a reasonable probability that, but for counsel's errors, **\*1385** [the defendant] would not have pleaded guilty and would have insisted on going to trial." *Ibid.*

[7] In contrast to *Hill,* here the ineffective advice led not to an offer's acceptance but to its rejection. Having to stand trial, not choosing to waive it, is the prejudice alleged. In these circumstances a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.,* that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed. Here, the Court of Appeals for the Sixth Circuit agreed with that test for *Strickland* prejudice in the context of a rejected plea bargain. This is consistent with the test adopted and applied by other appellate courts without demonstrated difficulties or systemic disruptions. See 376 Fed.Appx., at 571–573; see also, *e.g., United States v. Rodriguez Rodriguez,* 929 F.2d 747, 753, n. 1 (C.A.1 1991) *(per curiam); United States v. Gordon,* 156 F.3d

376, 380–381 (C.A.2 1998) *(per curiam); United States v. Day,* 969 F.2d 39, 43–45 (C.A.3 1992); *Beckham v. Wainwright,* 639 F.2d 262, 267 (C.A.5 1981); *Julian v. Bartley,* 495 F.3d 487, 498–500 (C.A.7 2007); *Wanatee v. Ault,* 259 F.3d 700, 703–704 (C.A.8 2001); *Nunes v. Mueller,* 350 F.3d 1045, 1052–1053 (C.A.9 2003); *Williams v. Jones,* 571 F.3d 1086, 1094–1095 (C.A.10 2009) *(per curiam); United States v. Gaviria,* 116 F.3d 1498, 1512–1514 (C.A.D.C.1997) *(per curiam).*

Petitioner and the Solicitor General propose a different, far more narrow, view of the Sixth Amendment. They contend there can be no finding of *Strickland* prejudice arising from plea bargaining if the defendant is later convicted at a fair trial. The three reasons petitioner and the Solicitor General offer for their approach are unpersuasive.

[8][9][10][11][12][13] First, petitioner and the Solicitor General claim that the sole purpose of the Sixth Amendment is to protect the right to a fair trial. Errors before trial, they argue, are not cognizable under the Sixth Amendment unless they affect the fairness of the trial itself. See Brief for Petitioner 12–21; Brief for United States as *Amicus Curiae* 10–12. The Sixth Amendment, however, is not so narrow in its reach. Cf. *Frye, ante,* at 1388, 132 S.Ct. 1399 (holding that a defendant can show prejudice under *Strickland* even absent a showing that the deficient performance precluded him from going to trial). The Sixth Amendment requires effective assistance of counsel at critical stages of a criminal proceeding. Its protections are not designed simply to protect the trial, even though "counsel's absence [in these stages] may derogate from the accused's right to a fair trial." *United States v. Wade,* 388 U.S. 218, 226, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). The constitutional guarantee applies to pretrial critical stages that are part of the whole course of a criminal proceeding, a proceeding in which defendants cannot be presumed to make critical decisions without counsel's advice. This is consistent, too, with the rule that defendants have a right to effective assistance of counsel on appeal, even



© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

132 S.Ct. 1376, 182 L.Ed.2d 398, 80 USLW 4244, 12 Cal. Daily Op. Serv. 3299, 2012 Daily Journal D.A.R. 3726,
23 Fla. L. Weekly Fed. S 203
**(Cite as: 132 S.Ct. 1376)**

though that cannot in any way be characterized as part of the trial. See, *e.g., Halbert v. Michigan,* 545 U.S. 605, 125 S.Ct. 2582, 162 L.Ed.2d 552 (2005); *Evitts v. Lucey,* 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985). The precedents also establish that there exists a right to counsel during sentencing in both noncapital, see ***1386** *Glover v. United States,* 531 U.S. 198, 203–204, 121 S.Ct. 696, 148 L.Ed.2d 604 (2001); *Mempa v. Rhay,* 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967), and capital cases, see *Wiggins v. Smith,* 539 U.S. 510, 538, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003). Even though sentencing does not concern the defendant's guilt or innocence, ineffective assistance of counsel during a sentencing hearing can result in *Strickland* prejudice because "any amount of [additional] jail time has Sixth Amendment significance." *Glover, supra,* at 203, 121 S.Ct. 696.

The Court, moreover, has not followed a rigid rule that an otherwise fair trial remedies errors not occurring at the trial itself. It has inquired instead whether the trial cured the particular error at issue. Thus, in *Vasquez v. Hillery,* 474 U.S. 254, 106 S.Ct. 617, 88 L.Ed.2d 598 (1986), the deliberate exclusion of all African–Americans from a grand jury was prejudicial because a defendant may have been tried on charges that would not have been brought at all by a properly constituted grand jury. *Id.,* at 263, 106 S.Ct. 617; see *Ballard v. United States,* 329 U.S. 187, 195, 67 S.Ct. 261, 91 L.Ed. 181 (1946) (dismissing an indictment returned by a grand jury from which women were excluded); see also *Stirone v. United States,* 361 U.S. 212, 218–219, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960) (reversing a defendant's conviction because the jury may have based its verdict on acts not charged in the indictment). By contrast, in *United States v. Mechanik,* 475 U.S. 66, 106 S.Ct. 938, 89 L.Ed.2d 50 (1986), the complained-of error was a violation of a grand jury rule meant to ensure probable cause existed to believe a defendant was guilty. A subsequent trial, resulting in a verdict of guilt, cured this error. See *id.,* at 72–73, 106 S.Ct. 938.

[14] In the instant case respondent went to trial rather than accept a plea deal, and it is conceded this was the result of ineffective assistance during the plea negotiation process. Respondent received a more severe sentence at trial, one 3 1/2 times more severe than he likely would have received by pleading guilty. Far from curing the error, the trial caused the injury from the error. Even if the trial itself is free from constitutional flaw, the defendant who goes to trial instead of taking a more favorable plea may be prejudiced from either a conviction on more serious counts or the imposition of a more severe sentence.

Second, petitioner claims this Court refined *Strickland*'s prejudice analysis in *Fretwell* to add an additional requirement that the defendant show that ineffective assistance of counsel led to his being denied a substantive or procedural right. Brief for Petitioner 12–13. The Court has rejected the argument that *Fretwell* modified *Strickland* before and does so again now. See *Williams v. Taylor,* 529 U.S. 362, 391, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) ("The Virginia Supreme Court erred in holding that our decision in *Lockhart v. Fretwell,* 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993), modified or in some way supplanted the rule set down in *Strickland*"); see also *Glover, supra,* at 203, 121 S.Ct. 696 ("The Court explained last Term [in *Williams*] that our holding in *Lockhart* does not supplant the *Strickland* analysis").

[15] Fretwell could not show *Strickland* prejudice resulting from his attorney's failure to object to the use of a sentencing factor the Eighth Circuit had erroneously (and temporarily) found to be impermissible. *Fretwell,* 506 U.S., at 373, 113 S.Ct. 838. Because the objection upon which his ineffective-assistance-of-counsel claim was premised was meritless, Fretwell could not demonstrate an error entitling him to relief. The case presented the "unusual circumstance where the defendant attempts to demonstrate prejudice ***1387** based on considerations that, as a matter of law, ought not inform the inquiry." *Ibid.* (O'Connor, J., concurring).

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 13

132 S.Ct. 1376, 182 L.Ed.2d 398, 80 USLW 4244, 12 Cal. Daily Op. Serv. 3299, 2012 Daily Journal D.A.R. 3726, 23 Fla. L. Weekly Fed. S 203
(Cite as: 132 S.Ct. 1376)

See also *ibid.* (recognizing "[t]he determinative question—whether there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different—remains unchanged" (internal quotation marks and citation omitted)). It is for this same reason a defendant cannot show prejudice based on counsel's refusal to present perjured testimony, even if such testimony might have affected the outcome of the case. See *Nix v. Whiteside,* 475 U.S. 157, 175, 106 S.Ct. 988, 89 L.Ed.2d 123 (1986) (holding first that counsel's refusal to present perjured testimony breached no professional duty and second that it cannot establish prejudice under *Strickland* ).

[16] Both *Fretwell* and *Nix* are instructive in that they demonstrate "there are also situations in which it would be unjust to characterize the likelihood of a different outcome as legitimate 'prejudice,' " *Williams, supra,* at 391–392, 120 S.Ct. 1495, because defendants would receive a windfall as a result of the application of an incorrect legal principle or a defense strategy outside the law. Here, however, the injured client seeks relief from counsel's failure to meet a valid legal standard, not from counsel's refusal to violate it. He maintains that, absent ineffective counsel, he would have accepted a plea offer for a sentence the prosecution evidently deemed consistent with the sound administration of criminal justice. The favorable sentence that eluded the defendant in the criminal proceeding appears to be the sentence he or others in his position would have received in the ordinary course, absent the failings of counsel. See Bibas, Regulating the Plea–Bargaining Market: From Caveat Emptor to Consumer Protection, 99 Cal. L.Rev. 1117, 1138 (2011) ("The expected post-trial sentence is imposed in only a few percent of cases. It is like the sticker price for cars: only an ignorant, ill-advised consumer would view full price as the norm and anything less a bargain"); see also *Frye, ante,* at 1386 – 1387, 132 S.Ct. 1399. If a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it. If that right is denied, pre-

judice can be shown if loss of the plea opportunity led to a trial resulting in a conviction on more serious charges or the imposition of a more severe sentence.

[17][18] It is, of course, true that defendants have "no right to be offered a plea ... nor a federal right that the judge accept it." *Frye, ante,* at 1388 – 1389, 132 S.Ct. 1399. In the circumstances here, that is beside the point. If no plea offer is made, or a plea deal is accepted by the defendant but rejected by the judge, the issue raised here simply does not arise. Much the same reasoning guides cases that find criminal defendants have a right to effective assistance of counsel in direct appeals even though the Constitution does not require States to provide a system of appellate review at all. See *Evitts,* 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821; see also *Douglas v. California,* 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963). As in those cases, "[w]hen a State opts to act in a field where its action has significant discretionary elements, it must nonetheless act in accord with the dictates of the Constitution." *Evitts, supra,* at 401, 105 S.Ct. 830.

[19] Third, petitioner seeks to preserve the conviction obtained by the State by arguing that the purpose of the Sixth Amendment is to ensure "the reliability of [a] conviction following trial." Brief for Petitioner 13. This argument, too, fails to comprehend the full scope of the Sixth Amendment's protections; and it is refuted***1388** by precedent. *Strickland* recognized "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." 466 U.S., at 686, 104 S.Ct. 2052. The goal of a just result is not divorced from the reliability of a conviction, see *United States v. Cronic,* 466 U.S. 648, 658, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984); but here the question is not the fairness or reliability of the trial but the fairness and regularity of the processes that preceded it, which caused the defendant to lose benefits he would have received in the ordinary



**31**

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

132 S.Ct. 1376, 182 L.Ed.2d 398, 80 USLW 4244, 12 Cal. Daily Op. Serv. 3299, 2012 Daily Journal D.A.R. 3726, 23 Fla. L. Weekly Fed. S 203
(Cite as: 132 S.Ct. 1376)

course but for counsel's ineffective assistance.

[20] There are instances, furthermore, where a reliable trial does not foreclose relief when counsel has failed to assert rights that may have altered the outcome. In *Kimmelman v. Morrison,* 477 U.S. 365, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986), the Court held that an attorney's failure to timely move to suppress evidence during trial could be grounds for federal habeas relief. The Court rejected the suggestion that the "failure to make a timely request for the exclusion of illegally seized evidence" could not be the basis for a Sixth Amendment violation because the evidence "is 'typically reliable and often the most probative information bearing on the guilt or innocence of the defendant.' " *Id.,* at 379, 106 S.Ct. 2574 (quoting *Stone v. Powell,* 428 U.S. 465, 490, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976)). "The constitutional rights of criminal defendants," the Court observed, "are granted to the innocent and the guilty alike. Consequently, we decline to hold either that the guarantee of effective assistance of counsel belongs solely to the innocent or that it attaches only to matters affecting the determination of actual guilt." 477 U.S., at 380, 106 S.Ct. 2574. The same logic applies here. The fact that respondent is guilty does not mean he was not entitled by the Sixth Amendment to effective assistance or that he suffered no prejudice from his attorney's deficient performance during plea bargaining.

In the end, petitioner's three arguments amount to one general contention: A fair trial wipes clean any deficient performance by defense counsel during plea bargaining. That position ignores the reality that criminal justice today is for the most part a system of pleas, not a system of trials. Ninety-seven percent of federal convictions and ninety-four percent of state convictions are the result of guilty pleas. See *Frye, ante,* at 1386, 132 S.Ct. 1399. As explained in *Frye,* the right to adequate assistance of counsel cannot be defined or enforced without taking account of the central role plea bargaining plays in securing convictions and determining sentences. *Ibid.* ("[I]t is insufficient simply to point to

the guarantee of a fair trial as a backstop that inoculates any errors in the pretrial process").

C

Even if a defendant shows ineffective assistance of counsel has caused the rejection of a plea leading to a trial and a more severe sentence, there is the question of what constitutes an appropriate remedy. That question must now be addressed.

[21] Sixth Amendment remedies should be "tailored to the injury suffered from the constitutional violation and should not unnecessarily infringe on competing interests." *United States v. Morrison,* 449 U.S. 361, 364, 101 S.Ct. 665, 66 L.Ed.2d 564 (1981). Thus, a remedy must "neutralize the taint" of a constitutional violation, *id.,* at 365, 101 S.Ct. 665, while at the same time not grant a windfall to the defendant or needlessly squander the considerable*1389 resources the State properly invested in the criminal prosecution. See *Mechanik,* 475 U.S., at 72, 106 S.Ct. 938 ("The reversal of a conviction entails substantial social costs: it forces jurors, witnesses, courts, the prosecution, and the defendants to expend further time, energy, and other resources to repeat a trial that has already once taken place; victims may be asked to relive their disturbing experiences").

[22] The specific injury suffered by defendants who decline a plea offer as a result of ineffective assistance of counsel and then receive a greater sentence as a result of trial can come in at least one of two forms. In some cases, the sole advantage a defendant would have received under the plea is a lesser sentence. This is typically the case when the charges that would have been admitted as part of the plea bargain are the same as the charges the defendant was convicted of after trial. In this situation the court may conduct an evidentiary hearing to determine whether the defendant has shown a reasonable probability that but for counsel's errors he would have accepted the plea. If the showing is made, the court may exercise discretion in determining whether the defendant should receive the term of imprisonment the government offered in the

132 S.Ct. 1376, 182 L.Ed.2d 398, 80 USLW 4244, 12 Cal. Daily Op. Serv. 3299, 2012 Daily Journal D.A.R. 3726, 23 Fla. L. Weekly Fed. S 203.
(Cite as: 132 S.Ct. 1376)

plea, the sentence he received at trial, or something in between.

[23] In some situations it may be that resentencing alone will not be full redress for the constitutional injury. If, for example, an offer was for a guilty plea to a count or counts less serious than the ones for which a defendant was convicted after trial, or if a mandatory sentence confines a judge's sentencing discretion after trial, a resentencing based on the conviction at trial may not suffice. See, e.g., *Williams*, 571 F.3d, at 1088; *Riggs v. Fairman*, 399 F.3d 1179, 1181 (C.A.9 2005). In these circumstances, the proper exercise of discretion to remedy the constitutional injury may be to require the prosecution to reoffer the plea proposal. Once this has occurred, the judge can then exercise discretion in deciding whether to vacate the conviction from trial and accept the plea or leave the conviction undisturbed.

In implementing a remedy in both of these situations, the trial court must weigh various factors; and the boundaries of proper discretion need not be defined here. Principles elaborated over time in decisions of state and federal courts, and in statutes and rules, will serve to give more complete guidance as to the factors that should bear upon the exercise of the judge's discretion. At this point, however, it suffices to note two considerations that are of relevance.

[24][25] First, a court may take account of a defendant's earlier expressed willingness, or unwillingness, to accept responsibility for his or her actions. Second, it is not necessary here to decide as a constitutional rule that a judge is required to prescind (that is to say disregard) any information concerning the crime that was discovered after the plea offer was made. The time continuum makes it difficult to restore the defendant and the prosecution to the precise positions they occupied prior to the rejection of the plea offer, but that baseline can be consulted in finding a remedy that does not require the prosecution to incur the expense of conducting a new trial.

Petitioner argues that implementing a remedy here will open the floodgates to litigation by defendants seeking to unsettle their convictions. See Brief for Petitioner 20. Petitioner's concern is misplaced. Courts have recognized claims of this sort for over 30 years, see *supra,* at 1384 – 1385, and yet there is no indication that *1390 the system is overwhelmed by these types of suits or that defendants are receiving windfalls as a result of strategically timed *Strickland* claims. See also *Padilla,* 559 U.S., at ——, 130 S.Ct. at 1484–1485 ("We confronted a similar 'floodgates' concern in *Hill,*" but a "flood did not follow in that decision's wake"). In addition, the "prosecution and the trial courts may adopt some measures to help ensure against late, frivolous, or fabricated claims after a later, less advantageous plea offer has been accepted or after a trial leading to conviction." *Frye, ante,* at 1408 – 1409, 132 S.Ct. 1399. See also *ibid.* (listing procedures currently used by various States). This, too, will help ensure against meritless claims.

III

[26] The standards for ineffective assistance of counsel when a defendant rejects a plea offer and goes to trial must now be applied to this case. Respondent brings a federal collateral challenge to a state-court conviction. Under AEDPA, a federal court may not grant a petition for a writ of habeas corpus unless the state court's adjudication on the merits was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). A decision is contrary to clearly established law if the state court "applies a rule that contradicts the governing law set forth in [Supreme Court] cases." *Williams v. Taylor,* 529 U.S. 362, 405, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) (opinion for the Court by O'Connor, J.). The Court of Appeals for the Sixth Circuit could not determine whether the Michigan Court of Appeals addressed respondent's ineffective-assistance-of-counsel claim or, if it did, "what the court decided, or even whether the correct legal rule was identified." 376 Fed.Appx., at 568–569.

**33**

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

132 S.Ct. 1376, 182 L.Ed.2d 398, 80 USLW 4244, 12 Cal. Daily Op. Serv. 3299, 2012 Daily Journal D.A.R. 3726, 23 Fla. L. Weekly Fed. S 203
(Cite as: 132 S.Ct. 1376)

[27] The state court's decision may not be quite so opaque as the Court of Appeals for the Sixth Circuit thought, yet the federal court was correct to note that AEDPA does not present a bar to granting respondent relief. That is because the Michigan Court of Appeals identified respondent's ineffective-assistance-of-counsel claim but failed to apply *Strickland* to assess it. Rather than applying *Strickland*, the state court simply found that respondent's rejection of the plea was knowing and voluntary. *Cooper*, 2005 WL 599740, *1, App. to Pet. for Cert. 45a. An inquiry into whether the rejection of a plea is knowing and voluntary, however, is not the correct means by which to address a claim of ineffective assistance of counsel. See *Hill*, 474 U.S., at 57–59, 106 S.Ct. at 370 (applying *Strickland* to assess a claim of ineffective assistance of counsel arising out of the plea negotiation process). After stating the incorrect standard, moreover, the state court then made an irrelevant observation about counsel's performance at trial and mischaracterized respondent's claim as a complaint that his attorney did not obtain a more favorable plea bargain. By failing to apply *Strickland* to assess the ineffective-assistance-of-counsel claim respondent raised, the state court's adjudication was contrary to clearly established federal law. And in that circumstance the federal courts in this habeas action can determine the principles necessary to grant relief. See *Panetti v. Quarterman*, 551 U.S. 930, 948, 127 S.Ct. 2842, 168 L.Ed.2d 662 (2007).

Respondent has satisfied *Strickland*'s two-part test. Regarding performance, perhaps it could be accepted that it is unclear whether respondent's counsel believed respondent could not be convicted for assault with intent to murder as a matter of law because the shots hit Mundy below the waist, or whether he simply *1391 thought this would be a persuasive argument to make to the jury to show lack of specific intent. And, as the Court of Appeals for the Sixth Circuit suggested, an erroneous strategic prediction about the outcome of a trial is not necessarily deficient performance. Here, however, the fact of deficient performance has been conceded

by all parties. The case comes to us on that assumption, so there is no need to address this question.

[28] As to prejudice, respondent has shown that but for counsel's deficient performance there is a reasonable probability he and the trial court would have accepted the guilty plea. See 376 Fed.Appx., at 571–572. In addition, as a result of not accepting the plea and being convicted at trial, respondent received a minimum sentence 3 & half; times greater than he would have received under the plea. The standard for ineffective assistance under *Strickland* has thus been satisfied.

[29] As a remedy, the District Court ordered specific performance of the original plea agreement. The correct remedy in these circumstances, however, is to order the State to reoffer the plea agreement. Presuming respondent accepts the offer, the state trial court can then exercise its discretion in determining whether to vacate the convictions and resentence respondent pursuant to the plea agreement, to vacate only some of the convictions and resentence respondent accordingly, or to leave the convictions and sentence from trial undisturbed. See Mich. Ct. Rule 6.302(C)(3) (2011) ("If there is a plea agreement and its terms provide for the defendant's plea to be made in exchange for a specific sentence disposition or a prosecutorial sentence recommendation, the court may ... reject the agreement"). Today's decision leaves open to the trial court how best to exercise that discretion in all the circumstances of the case.

The judgment of the Court of Appeals for the Sixth Circuit is vacated, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

Justice SCALIA, with whom Justice THOMAS joins, and with whom THE CHIEF JUSTICE joins as to all but Part IV, dissenting.
*"If a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it. If that right is*

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

132 S.Ct. 1376, 182 L.Ed.2d 398, 80 USLW 4244, 12 Cal. Daily Op. Serv. 3299, 2012 Daily Journal D.A.R. 3726, 23 Fla. L. Weekly Fed. S 203
(Cite as: 132 S.Ct. 1376)

*denied, prejudice can be shown if loss of the plea opportunity led to a trial resulting in a conviction on more serious charges or the imposition of a more severe sentence." Ante,* at 1387.

*"The inquiry then becomes how to define the duty and responsibilities of defense counsel in the plea bargain process. This is a difficult question .... Bargaining is, by its nature, defined to a substantial degree by personal style.... This case presents neither the necessity nor the occasion to define the duties of defense counsel in those respects...." Missouri v. Frye, ante,* at 1408, 132 S.Ct. 1399.

With those words from this and the companion case, the Court today opens a whole new field of constitutionalized criminal procedure: plea-bargaining law. The ordinary criminal process has become too long, too expensive, and unpredictable, in no small part as a consequence of an intricate federal Code of Criminal Procedure imposed on the States by this Court in pursuit of perfect justice. See Friendly, The Bill of Rights as a Code of Criminal Procedure, 53 Cal. L.Rev. 929 (1965). The Court now moves to bring perfection to the alternative in which prosecutors and **\*1392** defendants have sought relief. Today's opinions deal with only two aspects of counsel's plea-bargaining inadequacy, and leave other aspects (who knows what they might be?) to be worked out in further constitutional litigation that will burden the criminal process. And it would be foolish to think that "constitutional" rules governing *counsel*'s behavior will not be followed by rules governing the *prosecution*'s behavior in the plea-bargaining process that the Court today announces " '*is* the criminal justice system,' " *Frye, ante,* at 1407, 132 S.Ct. 1399 (quoting approvingly from Scott & Stuntz, Plea Bargaining as Contract, 101 Yale L.J. 1909, 1912 (1992) (hereinafter Scott)). Is it constitutional, for example, for the prosecution to withdraw a plea offer that has already been accepted? Or to withdraw an offer before the defense has had adequate time to consider and accept it? Or to make no plea offer at

all, even though its case is weak—thereby excluding the defendant from "the criminal justice system"?

Anthony Cooper received a full and fair trial, was found guilty of all charges by a unanimous jury, and was given the sentence that the law prescribed. The Court nonetheless concludes that Cooper is entitled to some sort of habeas corpus relief (perhaps) because his attorney's allegedly incompetent advice regarding a plea offer *caused* him to receive a full and fair trial. That conclusion is foreclosed by our precedents. Even if it were not foreclosed, the constitutional right to effective plea-bargainers that it establishes is at least a new rule of law, which does not undermine the Michigan Court of Appeals' decision and therefore cannot serve as the basis for habeas relief. And the remedy the Court announces—namely, whatever the state trial court in its discretion prescribes, down to and including no remedy at all—is unheard-of and quite absurd for violation of a constitutional right. I respectfully dissent.

I

This case and its companion, *Missouri v. Frye,* —— U.S. ——, 132 S.Ct. 1399, —— L.Ed.2d ——, raise relatively straightforward questions about the scope of the right to effective assistance of counsel. Our case law originally derived that right from the Due Process Clause, and its guarantee of a fair trial, see *United States v. Gonzalez–Lopez,* 548 U.S. 140, 147, 126 S.Ct. 2557, 165 L.Ed.2d 409 (2006), but the seminal case of *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), located the right within the Sixth Amendment. As the Court notes, *ante,* at 1394, the right to counsel does not begin at trial. It extends to "any stage of the prosecution, formal or informal, in court or out, where counsel's absence might derogate from the accused's right to a fair trial." *United States v. Wade,* 388 U.S. 218, 226, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). Applying that principle, we held that the "entry of a guilty plea, whether to a misdemeanor or a felony charge, ranks as a 'critical

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

132 S.Ct. 1376, 182 L.Ed.2d 398, 80 USLW 4244, 12 Cal. Daily Op. Serv. 3299, 2012 Daily Journal D.A.R. 3726, 23 Fla. L. Weekly Fed. S 203
(Cite as: 132 S.Ct. 1376)

stage' at which the right to counsel adheres." *Iowa v. Tovar,* 541 U.S. 77, 81, 124 S.Ct. 1379, 158 L.Ed.2d 209 (2004); see also *Hill v. Lockhart,* 474 U.S. 52, 58, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). And it follows from this that *acceptance* of a plea offer is a critical stage. That, and nothing more, is the point of the Court's observation in *Padilla v. Kentucky,* 559 U.S. ——, ——, 130 S.Ct. 1473, 1486, 176 L.Ed.2d 284 (2010), that "the negotiation of a plea bargain is a critical phase of litigation for purposes of the Sixth Amendment right to effective assistance of counsel." The defendant in *Padilla* had accepted the plea bargain and pleaded guilty, abandoning his right to a fair trial; he was entitled to advice of competent counsel before he did *1393 so. The Court has never held that the rule articulated in *Padilla, Tovar,* and *Hill* extends to all aspects of plea negotiations, requiring not just advice of competent counsel before the defendant accepts a plea bargain and pleads guilty, but also the advice of competent counsel before the defendant rejects a plea bargain and stands on his constitutional right to a fair trial. The latter is a vast departure from our past cases, protecting not just the constitutionally prescribed right to a fair adjudication of guilt and punishment, but a judicially invented right to effective plea bargaining.

It is also apparent from *Strickland* that bad plea bargaining has nothing to do with ineffective assistance of counsel in the constitutional sense. *Strickland* explained that "[i]n giving meaning to the requirement [of effective assistance], ... we must take its purpose—to ensure a fair trial—as the guide." 466 U.S., at 686, 104 S.Ct. 2052. Since "the right to the effective assistance of counsel is recognized not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial," *United States v. Cronic,* 466 U.S. 648, 658, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984), the "benchmark" inquiry in evaluating any claim of ineffective assistance is whether counsel's performance "so undermined the proper functioning of the adversarial process" that it failed to produce a reliably "just result." *Strickland,* 466 U.S., at 686, 104

S.Ct. 2052. That is what *Strickland* 's requirement of "prejudice" consists of: Because the right to effective assistance has as its purpose the assurance of a fair trial, the right is not infringed unless counsel's mistakes call into question the basic justice of a defendant's conviction or sentence. That has been, until today, entirely clear. A defendant must show "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.,* at 687, 104 S.Ct. 2052. See also *Gonzalez–Lopez, supra,* at 147, 126 S.Ct. 2557. Impairment of fair trial is how we distinguish between unfortunate attorney error and error of constitutional significance.[FN1]

> FN1. Rather than addressing the constitutional origins of the *right to effective counsel,* the Court responds to the broader claim (raised by no one) that "the sole purpose of the *Sixth Amendment* is to protect the right to a fair trial." *Ante,* at 1385 (emphasis added). Cf. Brief for United States as *Amicus Curiae* 10–12 (arguing that the "purpose of the Sixth Amendment *right to counsel* is to secure a fair trial" (emphasis added)); Brief for Petitioner 12–21 (same). To destroy that straw man, the Court cites cases in which violations of rights *other* than the right to effective counsel—and, perplexingly, even rights found outside the Sixth Amendment and the Constitution entirely—were not cured by a subsequent trial. *Vasquez v. Hillery,* 474 U.S. 254, 106 S.Ct. 617, 88 L.Ed.2d 598 (1986) (violation of equal protection in grand jury selection); *Ballard v. United States,* 329 U.S. 187, 67 S.Ct. 261, 91 L.Ed. 181 (1946) (violation of statutory scheme providing that women serve on juries); *Stirone v. United States,* 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960) (violation of Fifth Amendment right to indictment by grand jury). Unlike the right to effective counsel, no showing of prejudice is required to make violations of the rights

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

36

Page 19

132 S.Ct. 1376, 182 L.Ed.2d 398, 80 USLW 4244, 12 Cal. Daily Op. Serv. 3299, 2012 Daily Journal D.A.R. 3726, 23 Fla. L. Weekly Fed. S 203

(Cite as: 132 S.Ct. 1376)

at issue in *Vasquez, Ballard,* and *Stirone* complete. See *Vasquez, supra,* at 263–264, 106 S.Ct. 617 ("[D]iscrimination in the grand jury undermines the structural integrity of the criminal tribunal itself, and is not amenable to harmless-error review"); *Ballard, supra,* at 195, 67 S.Ct. 261 ("[R]eversible error does not depend on a showing of prejudice in an individual case"); *Stirone, supra,* at 217, 80 S.Ct. 270 ("Deprivation of such a basic right is far too serious to be treated as nothing more than a variance and then dismissed as harmless error"). Those cases are thus irrelevant to the question presented here, which is whether a defendant can establish *prejudice* under *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), while conceding the fairness of his conviction, sentence, and appeal.

**\*1394** To be sure, *Strickland* stated a rule of thumb for measuring prejudice which, applied blindly and out of context, could support the Court's holding today: "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S., at 694, 104 S.Ct. 2052. *Strickland* itself cautioned, however, that its test was not to be applied in a mechanical fashion, and that courts were not to divert their "ultimate focus" from "the fundamental fairness of the proceeding whose result is being challenged." *Id.,* at 696, 104 S.Ct. 2052. And until today we have followed that course.

In *Lockhart v. Fretwell,* 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993), the deficient performance at issue was the failure of counsel for a defendant who had been sentenced to death to make an objection that would have produced a sentence of life imprisonment instead. The objection was fully supported by then-extant Circuit law, so that the sentencing court would have been compelled to sustain it, producing a life sentence that

principles of double jeopardy would likely make final. See *id.,* at 383–385, 113 S.Ct. 838 (STEVENS, J., dissenting); *Bullington v. Missouri,* 451 U.S. 430, 101 S.Ct. 1852, 68 L.Ed.2d 270 (1981). By the time Fretwell's claim came before us, however, the Circuit law had been overruled in light of one of our cases. We determined that a prejudice analysis "focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable," would be defective. *Fretwell,* 506 U.S., at 369, 113 S.Ct. 838. Because counsel's error did not "deprive the defendant of any substantive or procedural right to which the law entitles him," the defendant's sentencing proceeding was fair and its result was reliable, even though counsel's error may have affected its outcome. *Id.,* at 372, 113 S.Ct. 838. In *Williams v. Taylor,* 529 U.S. 362, 391–393, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000), we explained that even though *Fretwell* did not mechanically apply an outcome-based test for prejudice, its reasoning was perfectly consistent with *Strickland.* "Fretwell's counsel had not deprived him of any substantive or procedural right to which the law entitled him." 529 U.S. at 392, 120 S.Ct. 1495.[FN2]

> FN2. *Kimmelman v. Morrison,* 477 U.S. 365, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986), cited by the Court, *ante,* at 1396 – 1397, does not contradict this principle. That case, which predated *Fretwell* and *Williams,* considered whether our holding that Fourth Amendment claims fully litigated in state court cannot be raised in federal habeas "should be extended to Sixth Amendment claims of ineffective assistance of counsel where the principal allegation and manifestation of inadequate representation is counsel's failure to file a timely motion to suppress evidence allegedly obtained in violation of the Fourth Amendment." 477 U.S., at 368, 106 S.Ct. 2574. Our negative answer to that question had nothing to do with the issue here. The parties in *Kimmelman* had not raised the

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

132 S.Ct. 1376, 182 L.Ed.2d 398, 80 USLW 4244, 12 Cal. Daily Op. Serv. 3299, 2012 Daily Journal D.A.R. 3726, 23 Fla. L. Weekly Fed. S 203
(Cite as: 132 S.Ct. 1376)

question "whether the admission of illegally seized but reliable evidence can ever constitute 'prejudice' under *Strickland* "—a question similar to the one presented here—and the Court therefore did not address it. *Id.,* at 391, 106 S.Ct. 2574 (Powell, J., concurring in judgment); see also *id.,* at 380, 106 S.Ct. 2574. *Kimmelman* made clear, however, how the answer to that question is to be determined: "The essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution *that the trial was rendered unfair and the verdict rendered suspect,* " *id.,* at 374, 106 S.Ct. 2574 (emphasis added). "Only those habeas petitioners who can prove under *Strickland that they have been denied a fair trial ...* will be granted the writ," *id.,* at 382, 106 S.Ct. 2574 (emphasis added). In short, *Kimmelman* 's only relevance is to prove the Court's opinion wrong.

Those precedents leave no doubt about the answer to the question presented here. **\*1395** As the Court itself observes, a criminal defendant has no right to a plea bargain. *Ante,* at 1395 – 1396. "[T]here is no constitutional right to plea bargain; the prosecutor need not do so if he prefers to go to trial." *Weatherford v. Bursey,* 429 U.S. 545, 561, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977). Counsel's mistakes in this case thus did not "deprive the defendant of a substantive or procedural right to which the law entitles him," *Williams, supra,* at 393, 120 S.Ct. 1495. Far from being "beside the point," *ante,* at 1406, that is critical to correct application of our precedents. Like *Fretwell,* this case "concerns the unusual circumstance where the defendant attempts to demonstrate prejudice based on considerations that, as a matter of law, ought not inform the inquiry," 506 U.S., at 373, 113 S.Ct. 838 (O'Connor, J., concurring); he claims "that he might have been denied 'a right the law simply does not recognize,' " *id.,* at 375, 113 S.Ct. 838 (same). *Strickland,*

*Fretwell,* and *Williams* all instruct that the pure outcome-based test on which the Court relies is an erroneous measure of cognizable prejudice. In ignoring *Strickland* 's "ultimate focus ... on the fundamental fairness of the proceeding whose result is being challenged," 466 U.S., at 696, 104 S.Ct. 2052, the Court has lost the forest for the trees, leading it to accept what we have previously rejected, the "novel argument that constitutional rights are infringed by trying the defendant rather than accepting his plea of guilty." *Weatherford, supra,* at 561, 97 S.Ct. 837.

II

Novelty alone is the second, independent reason why the Court's decision is wrong. This case arises on federal habeas, and hence is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). Since, as the Court acknowledges, the Michigan Court of Appeals adjudicated Cooper's ineffective-assistance claim on the merits, AEDPA bars federal courts from granting habeas relief unless that court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Yet the Court concludes that § 2254(d)(1) does not bar relief here, because "[b]y failing to apply *Strickland* to assess the ineffective-assistance-of-counsel claim respondent raised, the state court's adjudication was contrary to clearly established federal law." *Ante,* at 1390. That is not so.

The relevant portion of the Michigan Court of Appeals decision reads as follows:

"To establish ineffective assistance, the defendant must demonstrate that his counsel's performance fell below an objective standard of reasonableness and that counsel's representation so prejudiced the defendant that he was deprived of a fair trial. With respect to the prejudice aspect of the test, the defendant must demonstrate a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different, and that the attendant proceedings were

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.



132 S.Ct. 1376, 182 L.Ed.2d 398, 80 USLW 4244, 12 Cal. Daily Op. Serv. 3299, 2012 Daily Journal D.A.R. 3726, 23 Fla. L. Weekly Fed. S 203
(Cite as: 132 S.Ct. 1376)

fundamentally unfair and unreliable.

"Defendant challenges the trial court's finding after a *Ginther* hearing that defense counsel provided effective assistance to defendant during the plea bargaining process. He contends that defense counsel failed to convey the benefits of the plea offer to him and ignored his desire to plead guilty, and that these failures led him to reject a plea offer that he now wishes to accept. However, the record shows that defendant knowingly and intelligently rejected two plea offers and chose to go to trial. The record fails to support defendant's contentions that defense counsel's *1396 representation was ineffective because he rejected a defense based on [a] claim of self-defense and because he did not obtain a more favorable plea bargain for defendant." *People v. Cooper*, No. 250583 (Mar. 15, 2005), App. to Pet. for Cert. 45a, 2005 WL 599740, [at] *1 *(per curiam)* (footnote and citations omitted).

The first paragraph above, far from ignoring *Strickland*, recites its standard with a good deal more accuracy than the Court's opinion. The second paragraph, which is presumably an application of the standard recited in the first, says that "defendant knowingly and intelligently rejected two plea offers and chose to go to trial." This can be regarded as a denial that there was anything "fundamentally unfair" about Cooper's conviction and sentence, so that no *Strickland* prejudice had been shown. On the other hand, the entire second paragraph can be regarded as a contention that Cooper's claims of inadequate representation were unsupported by the record. The state court's analysis was admittedly not a model of clarity, but federal habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a license to penalize a state court for its opinion-writing technique. *Harrington v. Richter*, 562 U.S. ——, ——, 131 S.Ct. 770, 786, 178 L.Ed.2d 624 (2011) (internal quotation marks omitted). The Court's readiness to find error in the Michigan court's opinion is "inconsistent with the presumption that state courts

know and follow the law," *Woodford v. Visciotti*, 537 U.S. 19, 24, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002) *(per curiam)*, a presumption borne out here by the state court's recitation of the correct legal standard.

Since it is ambiguous whether the state court's holding was based on a lack of prejudice or rather the court's factual determination that there had been no deficient performance, to provide relief under AEDPA this Court must conclude that *both* holdings would have been unreasonable applications of clearly established law. See *Premo v. Moore*, 562 U.S. ——, ——, 131 S.Ct. 733, 740–741, 178 L.Ed.2d 649 (2011). The first is impossible of doing, since this Court has never held that a defendant in Cooper's position can establish *Strickland* prejudice. The Sixth Circuit thus violated AEDPA in granting habeas relief, and the Court now does the same.

III

It is impossible to conclude discussion of today's extraordinary opinion without commenting upon the remedy it provides for the unconstitutional conviction. It is a remedy unheard-of in American jurisprudence—and, I would be willing to bet, in the jurisprudence of any other country.

The Court requires Michigan to "reoffer the plea agreement" that was rejected because of bad advice from counsel. *Ante*, at 1391. That would indeed be a powerful remedy—but for the fact that Cooper's acceptance of that reoffered agreement is not conclusive. Astoundingly, "the state trial court can then *exercise its discretion* in determining whether to vacate the convictions and resentence respondent pursuant to the plea agreement, to vacate only some of the convictions and resentence respondent accordingly, *or to leave the convictions and sentence from trial undisturbed.* " *Ibid.* (emphasis added).

Why, one might ask, require a "reoffer" of the plea agreement, and its acceptance by the defendant? If the district court finds (as a necessary ele-

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.



132 S.Ct. 1376, 182 L.Ed.2d 398, 80 USLW 4244, 12 Cal. Daily Op. Serv. 3299, 2012 Daily Journal D.A.R. 3726, 23 Fla. L. Weekly Fed. S 203
(Cite as: 132 S.Ct. 1376)

ment, supposedly, of *Strickland* prejudice) that Cooper *would have accepted* the original offer, and would thereby have avoided trial and conviction, why not skip the reoffer-and-reacceptance minuet and simply leave it to the *1397 discretion of the state trial court what the remedy shall be? The answer, of course, is camouflage. Trial courts, after all, *regularly* accept or reject plea agreements, so there seems to be nothing extraordinary about their accepting or rejecting the new one mandated by today's decision. But the acceptance or rejection of a plea agreement that has no status whatever under the United States Constitution is worlds apart from what this is: "discretionary" specification of a remedy for an unconstitutional criminal conviction.

To be sure, the Court asserts that there are "factors" which bear upon (and presumably limit) exercise of this discretion—factors that it is not prepared to specify in full, much less assign some determinative weight. "Principles elaborated over time in decisions of state and federal courts, and in statutes and rules" will (in the Court's rosy view) sort all that out. *Ante,* at 1389. I find it extraordinary that "statutes and rules" can specify the remedy for a criminal defendant's unconstitutional conviction. Or that the remedy for an unconstitutional conviction should *ever* be subject *at all* to a trial judge's discretion. Or, finally, that the remedy could *ever* include no remedy at all.

I suspect that the Court's squeamishness in fashioning a remedy, and the incoherence of what it comes up with, is attributable to its realization, deep down, that there is no real constitutional violation here anyway. The defendant has been fairly tried, lawfully convicted, and properly sentenced, and *any* "remedy" provided for this will do nothing but undo the just results of a fair adversarial process.

IV

In many—perhaps most—countries of the world, American-style plea bargaining is forbidden in cases as serious as this one, even for the purpose of obtaining testimony that enables conviction of a greater malefactor, much less for the purpose of sparing the expense of trial. See, *e.g.,* World Plea Bargaining 344, 363–366 (S. Thaman ed. 2010). In Europe, many countries adhere to what they aptly call the "legality principle" by requiring prosecutors to charge all prosecutable offenses, which is typically incompatible with the practice of charge-bargaining. See, *e.g., id.,* at xxii; Langbein, Land Without Plea Bargaining: How the Germans Do It, 78 Mich. L.Rev. 204, 210–211 (1979) (describing the "Legalitätsprinzip," or rule of compulsory prosecution, in Germany). Such a system reflects an admirable belief that the law is the law, and those who break it should pay the penalty provided.

In the United States, we have plea bargaining a-plenty, but until today it has been regarded as a necessary evil. It presents grave risks of prosecutorial overcharging that effectively compels an innocent defendant to avoid massive risk by pleading guilty to a lesser offense; and for guilty defendants it often—perhaps usually—results in a* sentence well below what the law prescribes for the actual crime. But even so, we accept plea bargaining because many believe that without it our long and expensive process of criminal trial could not sustain the burden imposed on it, and our system of criminal justice would grind to a halt. See, *e.g.,* Alschuler, Plea Bargaining and its History, 79 Colum. L.Rev. 1, 38 (1979).

Today, however, the Supreme Court of the United States elevates plea bargaining from a necessary evil to a constitutional entitlement. It is no longer a somewhat embarrassing adjunct to our criminal justice system; rather, as the Court announces in the companion case to this one, " 'it *is* the criminal justice system.' " *Frye,Iante,* at 1407, 132 S.Ct. 1399 (quoting approvingly from Scott 1912). Thus, even *1398 though there is no doubt that the respondent here is guilty of the offense with which he was charged; even though he has received the exorbitant gold standard of American justice—a full-dress criminal trial with its innumerable constitutional and statutory limitations upon



© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

132 S.Ct. 1376, 182 L.Ed.2d 398, 80 USLW 4244, 12 Cal. Daily Op. Serv. 3299, 2012 Daily Journal D.A.R. 3726, 23 Fla. L. Weekly Fed. S 203
(Cite as: 132 S.Ct. 1376)

the evidence that the prosecution can bring forward, and (in Michigan as in most States [FN3]) the requirement of a unanimous guilty verdict by impartial jurors; the Court says that his conviction is invalid because he was deprived of his *constitutional entitlement* to plea-bargain.

> FN3. See *People v. Cooks*, 446 Mich. 503, 510, 521 N.W.2d 275, 278 (1994); 6 W. LaFave, J. Israel, N. King, & O. Kerr, Criminal Procedure § 22.1(e) (3d ed. 2007 and Supp. 2011–2012).

I am less saddened by the outcome of this case than I am by what it says about this Court's attitude toward criminal justice. The Court today embraces the sporting-chance theory of criminal law, in which the State functions like a conscientious casino-operator, giving each player a fair chance to beat the house, that is, to serve less time than the law says he deserves. And when a player is excluded from the tables, his *constitutional rights* have been violated. I do not subscribe to that theory. No one should, least of all the Justices of the Supreme Court.

\* \* \*

Today's decision upends decades of our cases, violates a federal statute, and opens a whole new boutique of constitutional jurisprudence ("plea-bargaining law") without even specifying the remedies the boutique offers. The result in the present case is the undoing of an adjudicatory process that worked *exactly* as it is supposed to. Released felon Anthony Cooper, who shot repeatedly and gravely injured a woman named Kali Mundy, was tried and convicted for his crimes by a jury of his peers, and given a punishment that Michigan's elected representatives have deemed appropriate. Nothing about that result is unfair or unconstitutional. To the contrary, it is wonderfully just, and infinitely superior to the trial-by-bargain that today's opinion affords constitutional status. I respectfully dissent.

Justice ALITO, dissenting.

For the reasons set out in Parts I and II of Justice SCALIA's dissent, the Court's holding in this case misapplies our ineffective-assistance-of-counsel case law and violates the requirements of the Antiterrorism and Effective Death Penalty Act of 1996. Respondent received a trial that was free of any identified constitutional error, and, as a result, there is no basis for concluding that respondent suffered prejudice and certainly not for granting habeas relief.

The weakness in the Court's analysis is highlighted by its opaque discussion of the remedy that is appropriate when a plea offer is rejected due to defective legal representation. If a defendant's Sixth Amendment rights are violated when deficient legal advice about a favorable plea offer causes the opportunity for that bargain to be lost, the only logical remedy is to give the defendant the benefit of the favorable deal. But such a remedy would cause serious injustice in many instances, as I believe the Court tacitly recognizes. The Court therefore eschews the only logical remedy and relies on the lower courts to exercise sound discretion in determining what is to be done.

Time will tell how this works out. The Court, for its part, finds it unnecessary to define "the boundaries of proper discretion" in today's opinion. *Ante,* at 1389. In my view, requiring the prosecution to renew*1399 an old plea offer would represent an abuse of discretion in at least two circumstances: first, when important new information about a defendant's culpability comes to light after the offer is rejected, and, second, when the rejection of the plea offer results in a substantial expenditure of scarce prosecutorial or judicial resources.

The lower court judges who must implement today's holding may—and I hope, will—do so in a way that mitigates its potential to produce unjust results. But I would not depend on these judges to come to the rescue. The Court's interpretation of the Sixth Amendment right to counsel is unsound, and I

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.



132 S.Ct. 1376, 182 L.Ed.2d 398, 80 USLW 4244, 12 Cal. Daily Op. Serv. 3299, 2012 Daily Journal D.A.R. 3726,
23 Fla. L. Weekly Fed. S 203
**(Cite as: 132 S.Ct. 1376)**

therefore respectfully dissent.

U.S.,2012.
Lafler v. Cooper
132 S.Ct. 1376, 182 L.Ed.2d 398, 80 USLW 4244,
12 Cal. Daily Op. Serv. 3299, 2012 Daily Journal
D.A.R. 3726, 23 Fla. L. Weekly Fed. S 203

END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Ex Parte Moussazadeh


361 S.W. 3d 684 (Tex. Crim. App. February 15, 2012)


( 11 PAGES )

▷

Court of Criminal Appeals of Texas.
Ex parte Max MOUSSAZADEH, Applicant.

Nos. AP–76,439, AP–74,185.
Feb. 15, 2012.

**Background:** After pleading guilty to murder, and after his murder conviction was affirmed on appeal, 962 S.W.2d 261, applicant sought a writ of habeas corpus, contending that his mistaken understanding of parole eligibility based on misinformation counsel conveyed to him rendered his guilty plea involuntary. The 232nd District Court, Harris County, A.D. Azios, J., entered findings of fact supporting relief. The Court of Criminal Appeals, 64 S.W.3d 404, denied relief. Applicant filed subsequent habeas application, and a suggestion for reconsideration asking the Court of Criminal Appeals, on its own motion, to reconsider its denial of initial habeas application.

**Holdings:** The Court of Criminal Appeals, Johnson, J., held that:

(1) it would reconsider, on its own initiative, applicant's initial habeas application;

(2) question of whether parole eligibility forms an affirmative part or essential element of the plea agreement is not determinative of court's deficient performance inquiry under *Strickland*; abrogating, *Ex parte Evans*, 690 S.W.2d 274;

(3) counsel's misinformation to defendant as to his parole eligibility constituted deficient performance; and

(4) counsel's error prejudiced defendant, and thus was ineffective assistance.

Relief granted upon reconsideration.

Keller, P.J., concurred in judgment, with opinion.

West Headnotes

**[1] Habeas Corpus 197 ⟳899**

197 Habeas Corpus
 197IV Operation and Effect of Determination; Res Judicata; Successive Proceedings
  197k899 k. Dismissal or hearing on successive petitions; evidence. Most Cited Cases
 Court of Criminal Appeals would reconsider, on its own initiative, applicant's initial application for writ of habeas corpus, which the Court had previously denied, and, thus, would dismiss applicant's subsequent habeas application. Rules App.Proc., Rule 79.2(d).

**[2] Habeas Corpus 197 ⟳894.1**

197 Habeas Corpus
 197IV Operation and Effect of Determination; Res Judicata; Successive Proceedings
  197k894 Refusal to Discharge; Subsequent Applications; Prejudice
   197k894.1 k. In general. Most Cited Cases
 An initial application for a writ of habeas corpus seeking an out-of-time appeal does not constitute a challenge to the conviction and does not bar subsequent writ applications.

**[3] Criminal Law 110 ⟳273.1(3)**

110 Criminal Law
 110XV Pleas
  110k272 Plea of Guilty
   110k273.1 Voluntary Character
    110k273.1(3) k. Effect of illegal detention or violation of constitutional rights; illegally acquired evidence. Most Cited Cases
 Counsel's advice can provide assistance so ineffective that it renders a guilty plea involuntary. U.S.C.A. Const.Amend. 6.

**[4] Criminal Law 110 ⟳273.1(3)**

110 Criminal Law
 110XV Pleas

361 S.W.3d 684
(Cite as: 361 S.W.3d 684)

110k272 Plea of Guilty
110k273.1 Voluntary Character
110k273.1(3) k. Effect of illegal detention or violation of constitutional rights; illegally acquired evidence. Most Cited Cases

A guilty plea is not knowing or voluntary if made as a result of ineffective assistance of counsel. U.S.C.A. Const.Amend. 6.

**[5] Criminal Law 110 273.1(3)**

110 Criminal Law
110XV Pleas
110k272 Plea of Guilty
110k273.1 Voluntary Character
110k273.1(3) k. Effect of illegal detention or violation of constitutional rights; illegally acquired evidence. Most Cited Cases

A defendant's decision to plead guilty when based upon erroneous advice of counsel is not done voluntarily and knowingly.

**[6] Pardon and Parole 284 42.1**

284 Pardon and Parole
284II Parole
284k42 Constitutional and Statutory Provisions
284k42.1 k. In general. Most Cited Cases

**Prisons 310 248**

310 Prisons
310II Prisoners and Inmates
310II(F) Duration of Confinement
310k248 k. Conditional release; community placement. Most Cited Cases

The statute in effect when the holding offense is committed determines an inmate's eligibility for release on mandatory supervision or parole.

**[7] Pardon and Parole 284 48.1**

284 Pardon and Parole
284II Parole
284k48 Eligibility for Parole or Parole Consideration

284k48.1 k. In general. Most Cited Cases
Parole eligibility requirements are direct consequences of a guilty plea because they are a definite and largely automatic result of a guilty plea.

**[8] Pardon and Parole 284 47**

284 Pardon and Parole
284II Parole
284k45 Authority or Duty to Grant Parole or Parole Consideration
284k47 k. Discretionary nature. Most Cited Cases

Parole attainment is not governed by statute and is granted at the discretion of the parole board.

**[9] Constitutional Law 92 2789**

92 Constitutional Law
92XXIII Ex Post Facto Prohibitions
92XXIII(A) Constitutional Prohibitions in General
92k2789 k. Penal laws in general. Most Cited Cases

**Constitutional Law 92 2790**

92 Constitutional Law
92XXIII Ex Post Facto Prohibitions
92XXIII(A) Constitutional Prohibitions in General
92k2790 k. Punishment in general. Most Cited Cases

A law that changes the punishment for a crime after the crime has been committed is an unconstitutional ex post facto law only if it inflicts a greater punishment than did the previous law. U.S.C.A. Const. Art. 1, § 10, cl. 1.

**[10] Constitutional Law 92 2789**

92 Constitutional Law
92XXIII Ex Post Facto Prohibitions
92XXIII(A) Constitutional Prohibitions in General
92k2789 k. Penal laws in general. Most Cited Cases

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.



361 S.W.3d 684
(Cite as: 361 S.W.3d 684)

A statute which mitigates the rigor of the law in force at the time a crime was committed cannot be regarded as ex post facto with reference to that crime. U.S.C.A. Const. Art. 1, § 10, cl. 1.

**[11] Criminal Law 110 ⟲1920**

110 Criminal Law
   110XXXI Counsel
     110XXXI(C) Adequacy of Representation
      110XXXI(C)2 Particular Cases and Issues
       110k1920 k. Plea. Most Cited Cases

The question of whether parole eligibility forms an affirmative part or essential element of the plea agreement is not determinative of the court's deficient performance inquiry under the *Strickland* test for ineffective assistance of counsel; abrogating, *Ex parte Evans*, 690 S.W.2d 274. U.S.C.A. Const.Amend. 6.

**[12] Habeas Corpus 197 ⟲486(3)**

197 Habeas Corpus
   197II Grounds for Relief; Illegality of Restraint
     197II(B) Particular Defects and Authority for Detention in General
      197k482 Counsel
       197k486 Adequacy and Effectiveness of Counsel
        197k486(3) k. Arraignment and plea. Most Cited Cases

To obtain habeas corpus relief on a claim of involuntary plea based on counsel's erroneous advice, a habeas corpus applicant must meet both prongs of the *Strickland* standard for ineffective assistance of counsel, which are that counsel's performance was deficient, and that a probability exists, sufficient to undermine the court's confidence in the result, that the outcome would have been different but for counsel's deficient performance; in the context of involuntary plea, the "different outcome" is choosing not to plead and instead choosing to go to trial. U.S.C.A. Const.Amend. 6.

**[13] Criminal Law 110 ⟲1882**

110 Criminal Law
   110XXXI Counsel
     110XXXI(C) Adequacy of Representation
      110XXXI(C)1 In General
       110k1879 Standard of Effective Assistance in General
        110k1882 k. Deficient representation in general. Most Cited Cases

Counsel's performance is deficient, as necessary to establish ineffective assistance, if it is shown to have fallen below an objective standard of reasonableness; the constitutionally appropriate level of reasonableness is defined by the practices and expectations of the legal community and prevailing professional norms therein. U.S.C.A. Const.Amend. 6.

**[14] Criminal Law 110 ⟲1920**

110 Criminal Law
   110XXXI Counsel
     110XXXI(C) Adequacy of Representation
      110XXXI(C)2 Particular Cases and Issues
       110k1920 k. Plea. Most Cited Cases

In situations in which the law is not clear, plea counsel should advise a client that pending criminal charges may carry a risk of other serious consequences; however, when a serious consequence is truly clear, counsel has an equally clear duty to give correct advice, and both failure to provide correct information and providing incorrect information violate that duty.

**[15] Criminal Law 110 ⟲1920**

110 Criminal Law
   110XXXI Counsel
     110XXXI(C) Adequacy of Representation
      110XXXI(C)2 Particular Cases and Issues
       110k1920 k. Plea. Most Cited Cases

Defense counsel's misinformation to murder defendant as to his parole eligibility, on which defendant relied in pleading guilty, constituted deficient performance, as element of ineffective assistance; parole eligibility requirements were presumptively mandatory, and counsel provided incor-

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

U. S.
Margaret and Herman Brown Library
Abilene Christian University
Abilene, TX 79601

rect advice. U.S.C.A. Const.Amend. 6; Vernon's Ann.Texas C.C.P. art. 42.18(8)(b)(3) (Repealed).

**[16] Criminal Law 110 ⟜1920**

110 Criminal Law
    110XXXI Counsel
        110XXXI(C) Adequacy of Representation
            110XXXI(C)2 Particular Cases and Issues
                110k1920 k. Plea. Most Cited Cases

Defense counsel's misinformation to murder defendant as to his parole eligibility, on which defendant relied in pleading guilty, prejudiced defendant, and thus was ineffective assistance; portion of defendant's sentence that had be served before he became eligible for parole was double the portion that he was led to believe he had to serve, and defendant swore in an affidavit that he would not have pled guilty if he had known the actual time he would have to serve. U.S.C.A. Const.Amend. 6; Vernon's Ann.Texas C.C.P. art. 42.18(8)(b)(3) (Repealed).

***686** Randy Schaffer, Houston, for Appellant.

Andrew J. Smith, Asst. D.A., Houston, Lisa C. McMinn, State's Attorney, Austin, for State.

*OPINION*

JOHNSON, J., delivered the opinion of the Court in which PRICE, WOMACK, KEASLER, HERVEY, COCHRAN, and ALCALA, JJ., joined.

Applicant pled guilty to the offense of murder without an agreement for punishment. The trial court accepted the plea and sentenced applicant to seventy-five years' incarceration. On direct appeal, the court of appeals affirmed the judgment of the trial court. *Moussazadeh v. State,* 962 S.W.2d 261 (Tex.App.-Houston [14th Dist.] 1998, pet. ref'd) ( *Moussazadeh I* ). Thereafter, applicant filed an application for habeas corpus relief. In a published opinion, we denied relief because applicant "failed to prove, by a preponderance of the evidence, that his plea was induced by a misunderstanding of the applicable parole law which formed an essential

element of the plea agreement." *Ex parte Moussazadeh,* 64 S.W.3d 404, 413 (Tex.Crim.App.2001) , *cert. denied,* 537 U.S. 813, 123 S.Ct. 74, 154 L.Ed.2d 16 (2002) ( *Moussazadeh II,* # AP–74,185). Applicant filed a subsequent application for writ of habeas corpus, *Moussazadeh III,* # AP–76,439, that ***687** asserts that trial counsel's mistaken advice regarding parole eligibility rendered his plea involuntary. We ordered the subsequent application filed and set for submission. After applicant filed the subsequent application, he also filed a suggestion for reconsideration that asks this Court, on its own motion, to reconsider its decision in *Moussazadeh II.*

[1][2] This Court, on its own initiative, may reconsider a prior denial of habeas corpus relief. TEX.R.APP. P. 79.2(d). We now reconsider, on our own initiative, the claim raised in applicant's second application for writ of habeas corpus, *Moussazadeh II,*[FN1] and grant relief. Applicant's subsequent application, *Moussazadeh III,* is dismissed.

> FN1. Applicant's first application sought an out-of-time appeal, which we granted. *Ex parte Moussazadeh,* No. AP–72,200 (Tex.Crim.App. delivered October 25, 1995) (not designated for publication). Such an initial application seeking an out-of-time appeal does not constitute a challenge to the conviction and does not bar subsequent writ applications. *Ex parte McPherson,* 32 S.W.3d 860, 861 (Tex.Crim.App.2000).

In *Moussazadeh II,* we discussed how applicant, under indictment for a capital murder committed on September 12, 1993, pled guilty to the reduced offense of murder without a sentencing agreement. Applicant, a juvenile at the time of the offense, served as "look-out" while one of his three co-defendants shot and killed a man during a robbery. *Moussazadeh II,* 64 S.W.3d at 406–07. While initially rejecting the state's offer of a guilty plea to the lesser offense of murder, ultimately applicant agreed to plead guilty to murder without a punish-

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.



361 S.W.3d 684
(Cite as: 361 S.W.3d 684)

ment agreement. The agreement included applicant's promise to testify at a co-defendant's trial, which he did. *Id.* at 407–09. During that testimony, applicant indicated that he understood that, in pleading guilty to the murder offense and because of parole-eligibility laws, he was facing a significantly lesser term of imprisonment than he would have faced if convicted of capital murder. *Id.* at 408–09. After the co-defendant's trial ended, applicant was sentenced to seventy-five years' incarceration without a deadly-weapon finding. *Id.* at 409.

Applicant's claim in his previous writ application, which we now reconsider, asserted that "counsel's gross misadvice regarding parole eligibility rendered applicant's guilty plea involuntary." He argued that "the matter of parole eligibility was implicitly incorporated in [his] plea agreement." He also argued that his "guilty plea was involuntary even if the matter of parole eligibility was not implicitly incorporated in the plea agreement." We quote from our opinion in *Moussazadeh II.*

It is quite possible that no one in this proceeding knew that the parole law had changed dramatically just 11 days before this robbery-murder. Applicant's parole eligibility is measured by the law in effect on the date of the offense. Under the law effective *until* September 1, 1993, a person serving a life sentence for capital murder was not eligible for parole until serving a flat 35 years. TEX.CODE CRIM. PROC. Art. 42.18, § 8(b)(2). *After* September 1, 1993, that person was not eligible for parole until serving a flat 40 years. TEX.CODE CRIM. PROC. Art. 42.18, § 8(b)(2) (effective Sept. 1, 1993). Under the law effective *until* September 1, 1993, a person whose conviction included a deadly weapon finding was not eligible for parole until he had served a flat one-fourth of his sentence, up to a maximum of 15 years. TEX.CODE CRIM. PROC. Art. 42.18, § 8(b)(3). *After* September 1, 1993, a person whose conviction contained a deadly weapon finding was required to serve a flat one-half *688 of the

sentence up to a maximum of 30 years. TEX.CODE CRIM. PROC. Art. 42.18, § 8(b)(3) (effective Sept. 1, 1993). Under the law effective *until* September 1, 1993, a person convicted of murder (but whose conviction did not contain a deadly weapon finding) was eligible for parole when his good time plus flat time equaled one-quarter of the sentence up to 15 years. TEX.CODE CRIM. PROC. Art. 42.18, § 8(b)(3). *After* September 1, 1993, a person convicted of murder was not eligible for parole until he had served one-half of his sentence or 30 years. TEX.CODE CRIM. PROC. Art. 42.18, § 8(b)(3) (effective Sept. 1, 1993).

The affidavits submitted by both applicant and his trial counsel with his habeas application state that they did not know of these statutory changes. Indeed, we may fairly infer from the record that the judge, prosecutor, and [the co-defendant's] counsel shared the same misunderstanding. However, neither trial counsel's nor applicant's affidavits state that the prosecutor agreed to make applicant's parole eligibility a term or essential element of the plea agreement. There is no evidence that the prosecutor ever discussed any specific term or particular percentage of the sentence that he believed applicant should or would serve in return for the prosecutor's dropping the charges from capital murder to straight murder. In sum, we are unable to find any evidence that proves the prosecutor or judge caused applicant to plead guilty based upon an incorrect understanding of Texas parole law. [Citation omitted.]

*Id.* at 409–10.

In *Moussazadeh II,* we held that a finding that parole eligibility formed an essential part of a plea agreement must be founded upon the express terms of the written plea agreement itself, the formal record at the plea hearing, or the written or testimonial evidence submitted by both the prosecution and the applicant in a habeas proceeding. *Id.* at 412. We were "unable to conclude ... that parole eligibility played any part, implicit or explicit, in the plea

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

agreement made between the prosecution and applicant." *Id.* at 413. We therefore "den[ied] applicant relief because he ... failed to prove, by a preponderance of the evidence, that his plea was induced by a misunderstanding of the applicable parole law which formed an essential element of the plea agreement." *Id.* Acknowledging our prior holdings that a guilty plea is not rendered involuntary simply because the defendant received and relied upon erroneous advice of counsel concerning parole eligibility, and that both parole eligibility and parole attainment are highly speculative future facts, we likewise rejected applicant's contention that his plea was involuntary regardless of whether the parole eligibility misinformation was implicitly incorporated into the plea agreement. *Id.* at 413–14.

The circumstances surrounding applicant's conviction are not in dispute. Prior to applicant's plea, trial counsel advised applicant about his parole eligibility, and that advice was incorrect. As we stated in *Moussazadeh II*, "The affidavits submitted by both applicant and his trial counsel with his habeas application state that they did not know of these [recently effective] statutory changes [in the parole-eligibility law]. Indeed, we may fairly infer from the record that the judge, prosecutor, and counsel for [the co-defendant against whom applicant testified] shared the same misunderstanding." *Moussazadeh II*, 64 S.W.3d at 410.

[3][4][5] Counsel's advice can provide assistance so ineffective that it renders a guilty plea involuntary. *689Hill v. Lockhart,* 474 U.S. 52, 56, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985) (quoting *McMann v. Richardson,* 397 U.S. 759, 771, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970); "voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.' "). A guilty plea is not knowing or voluntary if made as a result of ineffective assistance of counsel. *Ex parte Burns,* 601 S.W.2d 370, 372 (Tex.Crim.App.1980). A defendant's decision to plead guilty when based upon erroneous advice of counsel is not done voluntarily and

knowingly. *Ex parte Battle,* 817 S.W.2d 81, 83 (Tex.Crim.App.1991). *See also Ex parte Harrington,* 310 S.W.3d 452, 459 (Tex.Crim.App.2010) ("When counsel's representation falls below this [ *Strickland* ] standard, it renders any resulting guilty plea involuntary.").

Applicant's initial application contended that "counsel's gross misadvice regarding parole eligibility rendered applicant's guilty plea involuntary," "the matter of parole eligibility was implicitly incorporated in [his] plea agreement," and that his "plea agreement was involuntary even if the matter of parole eligibility was not implicitly incorporated in the plea agreement." Applicant now asks this Court to reconsider his application in light of *Padilla v. Kentucky,* 559 U.S. ——, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010), and overrule our previous decisions in *Ex parte Evans,* 690 S.W.2d 274 (Tex.Crim.App.1985), and *Moussazadeh II.*

The state contends that *Padilla* has no bearing upon the Court's disposition of applicant's claim and that *Ex parte Evans* and *Moussazadeh II* are "still based upon sound logic regarding parole eligibility and parole attainment as being highly speculative circumstances that does [sic] not render a guilty plea involuntary."

We conclude that both applicant and the state are partly correct: *Padilla* is not applicable to the facts before us, and our decisions in *Ex parte Evans* and *Moussazadeh II* were incorrect. We now disavow our prior decisions in *Ex parte Evans* and *Moussazadeh II* to the extent that they (1) require *parole-eligibility* misinformation to form an essential part of the plea agreement in order to make a showing of an involuntary plea that resulted from ineffective assistance of counsel, based upon such misinformation and (2) fail to appropriately recognize the distinction between parole *eligibility* and parole *attainment.*

[6] We have previously held that, because of the extremely speculative nature of parole attainment, advice from counsel concerning parole does



© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

361 S.W.3d 684
(Cite as: 361 S.W.3d 684)

not render a plea involuntary. *Ex parte Evans,* 690 S.W.2d at 279. However, *Evans* stated that, because "eligibility for parole is a fluctual [sic] societal decision; highly subject to change," *id.* at 278, an applicant must prove, by a preponderance of the evidence, that parole eligibility was an affirmative part or essential element of the plea bargain. FN2 *Id.* This is an incorrect statement of the law. While the general eligibility rules for parole may change over time, the eligibility rules remain the same for a given conviction. Likewise, an inmate who was eligible for mandatory release at the time of the offense remains eligible for mandatory release on that conviction, even if that offense subsequently becomes eligible for only discretionary mandatory release. "The statute in effect when the holding offense is committed determines an inmate's eligibility for release on mandatory*690 supervision or parole." *Ex parte Thompson,* 173 S.W.3d 458, 459 (Tex.Crim.App.2005). *Evans* held that, because parole attainment was speculative, its "legal importance on the subject of voluntariness of a guilty plea" should be "discounted." *Ex parte Evans,* 690 S.W.2d at 279. Then, based on its incorrect statement of law, *Evans* made an erroneous logical leap and applied the same standard to parole eligibility. As a result, *Evans* held that erroneous advice as to either parole eligibility or parole attainment would not render a plea involuntary. *Id.* In *Moussazadeh II,* we further conflated the concepts of eligibility and attainment.

> FN2. *See also Ex parte Trahan,* 781 S.W.2d 291, 292–93 (Tex.Crim.App.1989) (written plea memorandum reflected that applicant would become eligible for parole consideration after having served one-fourth of sentence; habeas relief available when that was not the law and terms of plea agreement were impossible to fulfill).

Although one can determine current parole eligibility with some degree of certainty, it is really parole attainment that is significant to a plea bargaining defendant. It matters very little that a per-

son is eligible for parole in one year on a ten year sentence if virtually no one is being paroled in less than seven or eight years on a ten year sentence. It is for this reason that we have termed parole attainment "too speculative to warrant being given effect upon" a defendant's guilty plea. 64 S.W.3d at 413, *quoting Evans, supra.*

[7][8][9][10] Contrary to our prior decisions, there are considerable, concrete distinctions between parole *attainment* and parole *eligibility.* Parole attainment is indeed highly speculative, due to various factors associated with circumstances surrounding an individual prisoner's parole application, such as the prisoner's behavior in prison, the composition and attitude of the parole board, the identity and attitude of the governor, the population of the prison system, and regulations governing "good time." *See Ex parte Carillo,* 687 S.W.2d 320, 325 (Tex.Crim.App.1985) (Miller, J., concurring). The question of parole eligibility, however, elicits a straightforward answer because an applicant's parole eligibility is determined by the law in effect on the date of the offense. *Ex parte Thompson,* 173 S.W.3d at 459. The statutes that govern the punishment of a particular offense control the issue of parole eligibility and are not subject to alteration, absent legislative amendment. Even in the event of a legislative amendment making a law more stringent, an applicant is subject only to the law governing parole eligibility at the time the offense was committed. *See Ex parte Alegria,* 464 S.W.2d 868, 874–75 (Tex.Crim.App.1971) (retroactive application of parole statute that increased defendant's cumulation of years required for parole eligibility violated *ex post facto* clauses of United States and Texas Constitutions). FN3 Parole-eligibility requirements are direct consequences because they are a definite and largely automatic result of a guilty plea. *See Mitschke v. State,* 129 S.W.3d 130, 135 (Tex.Crim.App.2004). Parole attainment, on the other hand, is not governed by statute and is granted at the discretion of the parole board.

> FN3. A law that changes the punishment

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.



for a crime after the crime has been committed is an unconstitutional *ex post facto* law only if it inflicts a greater punishment than did the previous law. *Ex parte Tate,* 471 S.W.2d 404, 406 (Tex.Crim.App.1971) (op. on reh'g); *Ex parte Scott,* 471 S.W.2d 54, 55–6 (Tex.Crim.App.1971). "[A] statute which mitigates the rigor of the law in force at the time a crime was committed cannot be regarded as *ex post facto* with reference to that crime." *Rooney v. North Dakota,* 196 U.S. 319, 325, 25 S.Ct. 264, 49 L.Ed. 494 (1905).

On a claim of involuntary plea, the standard for the analysis of harm under the *Strickland* protocol as expressed in these cases may be stated generally as "but for the erroneous advice of counsel, the applicant*691 would not have plead guilty." *Ex parte Harrington,* 310 S.W.3d at 458. *See also Ex parte Moody,* 991 S.W.2d 856, 858 (Tex.Crim.App.1999) ; *Ex parte Stephenson,* 722 S.W.2d 426, 428 (Tex.Crim.App.1987).

[11] When deciding whether to accept or reject a plea offer, a defendant will likely consider the actual minimum amount of time he will spend incarcerated. In order to properly consider his options, a defendant needs accurate information about the law concerning parole eligibility. Although we continue to recognize the distinction between direct and collateral consequences, we now hold that the question of whether parole eligibility forms an affirmative part or essential element of the plea agreement is not determinative of this Court's deficient-performance inquiry under *Strickland.*

[12] To obtain habeas corpus relief on a claim of involuntary plea, an applicant must meet both prongs of the *Strickland* standard: (1) counsel's performance "was deficient; and (2) that a probability exists, sufficient to undermine our confidence in the result, that the outcome would have been different but for counsel['s] deficient performance." *Ex parte White,* 160 S.W.3d 46, 49 (Tex.Crim.App.2004). In

the context of involuntary plea, the "different outcome" is choosing not to plead and instead choosing to go to trial.

[13][14] Counsel's performance is deficient if it is shown to have fallen below an objective standard of reasonableness. *Id.* at 51; *Strickland v. Washington,* 466 U.S. 668, 687–88, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The constitutionally appropriate level of reasonableness is defined by the practices and expectations of the legal community and prevailing professional norms therein. *Strickland, supra,* at 688, 104 S.Ct. 2052. In situations in which the law is not clear, counsel should advise a client that pending criminal charges may carry a risk of other serious consequences. When a serious consequence is truly clear, however, counsel has an equally clear duty to give correct advice. Both failure to provide correct information and providing incorrect information violate that duty.

[15] The terms of the relevant parole-eligibility statute are succinct and clear with respect to the consequences of a guilty plea. Based upon the date in which the instant offense was committed, Tex.Code Crim. Proc. art. 42.18 § 8(b)(3) clearly and succinctly provided that "a person convicted of murder was not eligible for parole until he had served one-half of his sentence or thirty years." *Moussazadeh II, supra,* at 409. Applicant's counsel could have easily determined the applicable parole-eligibility requirements simply by reading the text of the statute. Instead, applicant's counsel failed to inform him of changes in the parole-eligibility statutes that essentially doubled the length of time he must serve before becoming eligible for parole. The fact that the amendments took effect only eleven days before the offense is of no consequence.[FN4]

> FN4. Parole eligibility is not speculative. In this case, parole eligibility was statutorily determined and, at the time of the plea, there was no speculation about those statutory terms. Those terms of parole *eligibility* were clear, succinct, and explicit. It appears that all parties involved were un-

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.



aware that parole eligibility had changed significantly just a few days before the commission of the alleged offense.

The performance of applicant's counsel was deficient: the consequences of applicant's plea could have been easily determined by reading the applicable statute. Parole-eligibility requirements are presumptively mandatory, and applicant's trial counsel provided incorrect advice. We *692 conclude that applicant has sufficiently proved that his counsel was constitutionally deficient.

[16] The portion of applicant's sentence that must be served before he becomes eligible for parole was double the portion that he was led to believe he must serve. Based on applicant's affidavit of January 13, 1997,[FN5] we also conclude that applicant would not have pled guilty if he had known the actual time he would have to serve, and thus prejudice is shown. We find that the habeas court's findings of fact and conclusions of law are supported by the record and agree that relief should be granted.

> FN5. "Had Judge Azios, Mr. Jones, or Mr. Cogdell told me that a murder conviction would require me to serve aggravated time of one-half of my sentence, up to a maximum of 30 years, even without a deadly weapon finding, I would not have accepted the plea bargain."

Accordingly, upon reconsideration, we grant relief. The judgment in this cause is hereby vacated, and applicant is remanded to the custody of the Harris County Sheriff to answer the charges set out in the indictment. The trial court shall issue an appropriate bench warrant within ten days after the mandate of this Court issues. Copies of this opinion shall be sent to the trial court and to the Texas Department of Criminal Justice, correctional institutions division.

KELLER, P.J., filed a concurring opinion. MEYERS, J., did not participate.

KELLER, P.J., concurring.

In overruling *Ex parte Evans*,[FN1] the Court creates a new rule of constitutional law. Under *Teague*, with some exceptions, federal courts may not announce or apply new rules of constitutional law on collateral review.[FN2] The states are not bound by the *Teague* rule and may afford retroactive effect on collateral review in situations not allowed under *Teague*.[FN3] Nevertheless, with respect to the new Confrontation Clause holding articulated in *Crawford v. Washington*,[FN4] we applied the rule in *Teague* to bar retroactive application on habeas corpus.[FN5] The Court does not conduct a retroactivity analysis in this case, and I do not know its reason for making the new rule retroactive. Has the Court abandoned *Teague* altogether in favor of its own retroactivity analysis? Does it intend to adhere to *Teague*, but with state-created exceptions? Do any exceptions—articulated in *Teague* or state-created—apply in the present case? If the Court is going to overrule prior precedent on habeas review, as it does here, I believe that it should clearly explain how this fits into our retroactivity jurisprudence.

> FN1. 690 S.W.2d 274 (Tex.Crim.App.1985).

> FN2. *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989).

> FN3. *Danforth v. Minnesota*, 552 U.S. 264, 128 S.Ct. 1029, 169 L.Ed.2d 859 (2008); *Ex parte Lave*, 257 S.W.3d 235, 237 & n. 15 (Tex.Crim.App.2008).

> FN4. 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).

> FN5. *Lave*, 257 S.W.3d at 237; *Ex parte Keith*, 202 S.W.3d 767 (Tex.Crim.App.2006).

There is an easier way to resolve this case. During the plea colloquy, the trial judge was prepared to make a deadly weapon finding, but the

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

parties explained that the issue was to be left open for the judge to determine at punishment, which would be assessed after applicant testified against a co-defendant in accordance with the plea agreement.[FN6] This explanation was consistent with the parties agreeing *693 that applicant would have his chance, after cooperating with the State, to persuade the trial judge to make his time "non-aggravated," i.e. subject to more generous parole-eligibility rules available to non–3g offenses.[FN7] But less than two weeks before the offense had been committed, the law had changed to treat murder as an "aggravated" offense for parole-eligibility purposes, regardless of whether there was a deadly-weapon finding.[FN8] In its findings of fact on applicant's original habeas application, the habeas judge found that the prosecutor and the trial judge ratified defense counsel's misinformation about parole eligibility "by attaching significance to the deadly weapon finding."[FN9] The habeas judge recommended that applicant be granted a new trial.

> FN6. *See Ex parte Moussazadeh,* 64 S.W.3d 404, 408 (Tex.Crim.App.2001).
>
> FN7. *See* TEX.CODE CRIM. PROC. art. 42.12 § 3g; TEX. GOV'T CODE § 508.145(d).
>
> FN8. *Moussazadeh,* 64 S.W.3d at 409.
>
> FN9. The habeas judge also found that appellant would not have pleaded guilty absent the misinformation.

In our original opinion on applicant's habeas application, we declined to follow the habeas judge's finding, and her ultimate recommendation, because it required "too many inferences stacked upon each other" for the deferral of the deadly weapon issue "to support a finding that it was the parties' clear intention that parole eligibility was an essential element of the plea bargain."[FN10] We cited no authority for this "inference-stacking" holding,[FN11] and thus it does not appear to be based upon an established rule that we would have

to change. Moreover, with regard to the advice given in *Evans,* we said in that case:

> FN10. *Id.* at 413.
>
> FN11. *See id.*

No overt sanctioning of this advice by the judge or the prosecutor appears in the record and it does not appear to have been a part of the plea bargain. We realize that it is common for the parties to play the guessing game of parole eligibility in plea negotiations. We decline, however, to elevate this common practice to the status of an element of the plea bargain without some further indication from the record evidencing that status. We conclude, then, that we are not dealing with a broken or impossible plea bargain situation.[FN12]

> FN12. 690 S.W.2d at 277.

Unlike in *Evans,* there was overt sanctioning of the attorney's advice by the judge and the prosecutor, or at least the habeas court could so rationally conclude, as it has done. Thus, we simply misanalyzed the issue under *Evans,* and it is appropriate for us to reconsider the issue now.

Further, since our original opinion in this case, we have decided *Hooper,* where we indicated that inference stacking was not necessarily irrational and that we should focus, not on whether inferences are being stacked, but simply on the rationality of the inferences in addressing the sufficiency of the evidence to support a conviction.[FN13]

> FN13. *Hooper v. State,* 214 S.W.3d 9, 16–17 (Tex.Crim.App.2007). If it were necessary to decide whether *Hooper's* pronouncement regarding inference stacking constituted a new rule under *Teague,* I would hold that it does not, because, regardless of the scope of Texas's version of *Teague's* proscription against announcing new constitutional rules of criminal procedure on habeas, *see Danforth, supra,* such a proscription cannot apply to basic

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

52

361 S.W.3d 684
(Cite as: 361 S.W.3d 684)

standards of habeas practice. Otherwise a court could never change its procedures or standards on habeas.

Finally, I would not hold, as the Court appears to do,[FN14] that the simple failure to **694** convey information about parole eligibility renders a guilty plea involuntary. We need not address whether counsel has an obligation to convey information about the parole consequences of a plea. In this case, it is enough to hold that, if counsel does convey this type of information, he must do so correctly. Here, the information was incorrect.

> FN14. "Both failure to provide correct information and providing incorrect information violate that duty[.]" Court's opinion at 691.

Although I agree that applicant is entitled to a new trial, I do not join the Court's opinion. I concur in the Court's judgment.

Tex.Crim.App.,2012.
Ex Parte Moussazadeh
361 S.W.3d 684

END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.